Willie CRUMPTON, Plaintiff,

v.

PHILIP MORRIS, USA, a Virginia
corporation and Donald Willis,
Defendants.

Civ. A. No. 93–K–123.

United States District Court,
D. Colorado.

March 4, 1994.

Richard S. Shaffer, Aurora, CO, for plaintiff.

James E. Scarboro, Lewis A. Steverson, Arnold and Porter, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Willie Crumpton commenced this action in state court against Defendants Philip Morris, USA ("PM") and Donald Willis, asserting claims for (1) racial discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–16, ("Title VII") and the Colorado Anti–Discrimination Act of 1957, Colo.Rev.Stat. 24–34–301 to –915, (2) fraud by deceit, (3) intentional infliction of emotional distress and (4) tortious interference with contractual rights. Defendants removed the action to federal court. Defendants move for summary judgment on all claims asserted by Crumpton under Title VII, which claims are asserted against PM only. Defendants also move to strike the affidavit of Kenneth W. Sorg submitted by Crumpton in support of his surreply to Defendants motion for summary judgment. I grant the motion for summary judgment and deny the motion to strike as moot.

### I. *Factual Background*

The following facts are undisputed. PM is an unincorporated division of Philip Morris Incorporated ("Philip Morris") and is located in Highlands Ranch, Colorado. PM distributes Philip Morris products in Colorado and other Western states. On July 26, 1981, PM hired Crumpton as a sales representative. He held several interim positions and was eventually promoted to division manager in August 1988. As a division manager, Crumpton was responsible for supervising and training sales and merchandising representatives. He held this position until he was fired on May 6, 1991. Crumpton's immediate superior for the period of his employment as division manager was Don Willis.

Crumpton additionally alleges that he received satisfactory performance reviews until he was fired. Crumpton notes that Willis asked him but not other division managers to serve in two additional positions at the same time, as area manager and warehouse supervisor. Willis was responsible for providing instruction to the division managers under his supervision as to the use of certain training and development forms. Willis failed to give Crumpton any direction in the preparation of these forms. Crumpton began to record his time spent at the warehouse in the training and development form. Willis instructed him not to do so, but to record this time as time spent doing other activities, which he was not in fact doing. Crumpton followed Willis' instruction and maintains that he was fired for doing so. Crumpton further alleges that, throughout his employment at PM, he was treated disparately in terms of his hours and duties.

Defendants allege that Brian Anderson, PM's Regional Sales Director, received a complaint from another employee in Crumpton's division that Crumpton was difficult to work for, racially biased and treated the

employees under his supervision unfairly. PM investigated the complaint and reviewed the "call summaries" of several sales representatives in Crumpton's division, in which they had recorded the training time spent with Crumpton. PM discovered that, in his training and development forms, Crumpton had recorded a considerably larger amount of time spent with each sales representative than shown in the call summaries. PM met with each of these sales representatives and obtained signed statements reflecting that Crumpton's forms were inaccurate. Anderson then forwarded Crumpton's file, the development and training forms, call summaries and the signed statements to the Philip Morris personnel office in Los Angeles. The Los Angeles office then forwarded the documentation to Philip Morris' central office in New York.

Defendants assert that Philip Morris' policy requires all terminations of individuals in the position of manager and above be made by the regional personnel office, in this case Los Angeles. The New York and Los Angeles offices informed Anderson that Crumpton should be terminated for falsifying documents in violation of written Philip Morris policy. On May 10, 1991 Anderson terminated Crumpton in the presence of Willis and a representative from the Los Angeles office. Defendants maintain that the decision was made without regard to Crumpton's race.

## II. *Summary Judgment Standards*

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. Plaintiff must come forth with specific facts to show a genuine issue of material fact; mere assertions or conjecture as to intent or pretext is not enough to survive summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 771–72 (10th Cir.1988).

## III. *Title VII Claims*

### A. *Framework of Legal Analysis*

The Tenth Circuit has adopted the burden shifting format for analyzing Title VII claims set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Equal Employment Opportunity Commission v. Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (quoting *McDonnell,* 411 U.S. at 802–04, 93 S.Ct. at 1824).

■ If the plaintiff fails to establish his prima facie case, the burden never shifts to the defendant, and plaintiff's claim must be dismissed. *See Allen v. Denver Pub. Sch. Bd.,* 928 F.2d 978, 984–85 (10th Cir.1991) (affirming district court's summary judgment for employer where plaintiff failed to state prima facie employment discrimination claim).

### B. *Discriminatory Termination*

■ Crumpton alleges that PM wrongfully terminated him as division manager because of his race. To prove a prima facie case of discriminatory termination, Crumpton must show that: (1) he belongs to a class protected by Title VII, (2) he was terminated for violating a PM work rule and (3) similarly situated non–African–American employees were

treated differently. *See Flasher*, 986 F.2d at 1316.

PM argues that Crumpton, who has admitted to falsifying documents, cannot satisfy the third element of this test, as he was terminated pursuant to a written Philip Morris policy which forbids such falsification. PM maintains that Philip Morris' policy of terminating individuals who falsify documents has been implemented repeatedly without regard to race. (Defs.' Mot. Summ.J., Ex. A at ¶ 22). Further, PM asserts that in the last three years, three PM employees have been terminated for falsifying documents, of whom only one, Crumpton, is African–American. (*Id.*)

Crumpton responds that (1) he has direct knowledge that Willis was intent upon terminating him because he was African–American, (2) a similarly situated non–African–American violated the same work rule as Crumpton and was not terminated and (3) Defendants displayed "racial insensitivity" towards Crumpton.

Once Crumpton has established a prima facie case of discrimination, the burden shifts to PM to articulate a legitimate non-discriminatory reason for termination of Crumpton's employment. If PM then discharges such burden, the burden shifts back to Crumpton to show that the legitimate reason was not the true reason, but a pretext for discrimination. *See Flasher*, 986 F.2d at 1316. At such point, Crumpton's allegations of direct knowledge that Willis wanted to terminate him because he was African–American and of Defendants' "racial insensitivity" would be relevant to whether the legitimate reason was a pretext for discrimination. To reach this point, however, Crumpton must first establish the three elements outlined in *Flasher*. Crumpton fails to establish the third element, namely that similarly situated non–African–American employees were treated differently.

In order to prove this third element of his prima facie case, Crumpton submits that Richard Mefford, an Anglo PM division manager, violated the same rule as Crumpton did but was not terminated. This submission does not satisfy the third element for two reasons. First, Crumpton does not show

that Mefford was similarly situated, in the sense that he violated the PM work rule to the same degree that Crumpton did. The quote from the deposition of Barry Anderson on which Crumpton relies indicates that Mefford falsified records in one specific instance. (Pl's.Resp.Defs.' Mot.Summ.J. at 9.) Crumpton, however, of his own admission, repeatedly falsified records over a number of years. (*Id.* at 5.)

Second, Crumpton points to only one white employee who received less severe discipline for the allegedly similar conduct. In *Cook v. CSX Transportation Corp.*, the court held that

[a] plaintiff seeking to establish a prima facie case by relying on a broad history of disciplinary enforcement cannot fairly claim that an inference of racial discrimination should be drawn from one factual circumstance taken out of the context of the disciplinary treatment generally afforded by the employer for conduct similar to that of the plaintiff.

988 F.2d 507, 512 (4th Cir.1993). Here, Defendants have shown that over the past three years, three employees of PM have been terminated for engaging in extensive falsification and that Crumpton was the only African–American among those terminated. (Defs.Mot.Summ.J., Ex. A at ¶ 22.) None of Crumpton's allegations create a material dispute of fact in this regard.

Crumpton next points to racial epithets allegedly made by Willis and alleges that Willis and Anderson were the true decision makers in his termination. Assuming that the racial comments were made, Crumpton must show that Willis participated in the decision-making process regarding his termination. *See Figures v. Board of Pub. Utils. of the City of Kansas*, 967 F.2d 357, 360 (10th Cir.1992) ("evidence of racial comments made by [two individual defendants] was not probative of any issue in the case unless [the plaintiff] could link those comments to personnel actions of hiring, firing and promoting"); *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1221 (7th Cir.1991) ("[s]tatements made by inferior employees are not probative of an intent to discriminate by the

decisionmaker"); *Snoey v. Advanced Forming Technology, Inc.,* slip op. at 5–6, 844 F.Supp. 1394, ——–—— (D.Colo.1994) (age-related comments by non-decision makers were not material in showing that the employer's action was based on age discrimination and was mere pretext); *Luddington v. Bell,* 796 F.Supp. 1550, 1564 (S.D.Ind.1990), *aff'd,* 966 F.2d 225 (7th Cir.1992), *petition for cert. filed,* No. 92–977 (Dec. 3, 1992), (plaintiff was required to show that individuals who allegedly made retaliatory comments participated in the decision-making process regarding the plaintiff's job applications). However, the undisputed facts show that neither Willis nor Anderson, but Philip Morris' New York and Los Angeles offices, decided that Crumpton should be terminated. Although Willis may have had his own agenda to get rid of Crumpton, Crumpton has failed to identify any evidence that Philip Morris' decision was motivated by race. Accordingly, I find that Crumpton has failed to establish a prima facie case of discriminatory termination.

## C. Failure to Train

■ Crumpton alleges that PM failed to provide training to him because of his race. To establish a prima facie case of discriminatory training, Crumpton must show that: (1) he belongs to a group protected under Title VII, (2) he did not receive the same training that non–African–Americans received, and (3) PM was aware of the discrimination and failed to remedy it. *See Shah v. Mt. Zion Hosp. & Medical Ctr.,* 642 F.2d 268, 271 (9th Cir.1981). Crumpton fails to establish the second and third elements of a prima facie case.

■ The crux of Crumpton's discriminatory training claim is that PM provided training to other division managers on how to fill out forms but not to him. (Pl.'s Resp.Defs.' Mot.Summ.J. at 11.) Crumpton has not established that he did not receive the same training that non–African–Americans received.[1] The only evidence Crumpton pro-

duced in this regard is his statement that in about May 1989, Willis instructed him to go to the warehouse to get some materials for Willis to use to train Debbie Kronschnable, an Anglo, and that Willis said that he was not going to make the same mistake by not training Kronschnable as he had done with Crumpton. (Pl's.Resp.Defs.' Mot.Summ.J., Ex. 2 at ¶¶ 23–24.) Crumpton fails to provide any evidence concerning training which Kronschnable actually received, let alone training in the use of forms by division managers. Further, Crumpton fails to establish that PM was aware of discriminatory training and failed to remedy it. To the contrary, PM has shown that it did not provide formal training to division managers for filling out training and development forms and that no other division managers requested training from Willis in this regard. (Defs.'Mot.Summ.J., Ex. B at ¶¶ 16–17.) Accordingly, I find that Crumpton has failed to establish a prima facie case of discriminatory failure to train.

## D. Failure to Promote

■ Crumpton alleges that PM failed to promote him because of his race. To establish a prima facie case of discriminatory failure to promote, Crumpton must show that: (1) he belongs to a class protected under Title VII, (2) he was not promoted to an available position for which he was qualified, and (3) a non–African–American was promoted to the position which he sought. *See Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 796 (10th Cir.1993). Crumpton fails to establish the second element of a prima facie case. He does not show that he applied for a promotion, in this case the position of senior accounts manager, or that applying for the position would have been futile because PM would have denied him the promotion in accordance with "a consistently enforced discriminatory policy." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 365, 97 S.Ct. 1843, 1869, 52 L.Ed.2d 396 (1977).

---

1. Defendants allege that Crumpton testified in his deposition that he was unaware of any training provided to PM employees that he did not receive. (Defs.'Mot.Summ.J. at 16.) Defendants cite Crumpton Dep. at 176–77. I cannot consider the deposition testimony in connection with the motion because Defendants do not attach a copy of the transcript.

Crumpton contends that he did not apply for the position of senior accounts manager because he was told by Willis and Willis' supervisor, Jack Gibson, that he could not apply for this position. However, in order to satisfy the second element of a prima facie case, Crumpton, a non-applicant must show that he was a "potential victim of unlawful discrimination" and that he "was deterred from applying for the job by the employer's discriminatory practices." *Id.* at 367–68, 97 S.Ct. at 1871; *see also Robinson v. Montgomery Ward & Co.*, 823 F.2d 793, 796 (4th Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988). Crumpton admits that the New York office of Philip Morris would have made the decision regarding applications for the position, (Pl's.Resp.Defs.' Mot.Summ.J., Ex. 2 at ¶ 27), but fails to show that either Philip Morris or PM had "an extended pattern and practice of discrimination as evidence that an application from a minority employee ... would have been a vain and useless act." *International Bhd. of Teamsters*, 431 U.S. at 368, 97 S.Ct. at 1871. To the contrary, Crumpton contends that "[t]his is a case about a hard-working black male ... who was promoted through the ranks of the Defendant corporation." (Pl's.Resp.Defs.' Mot.Summ.J. at 1.) Further, two months after the senior accounts manager position was filled, Crumpton was promoted to the position of division manager. Irrespective of which position is the more senior, Crumpton has not carried the burden of proving that PM had an extended pattern of discrimination which deterred him from applying for the job. Accordingly, I find that Crumpton has failed to establish a prima facie case of discriminatory failure to promote.

### E. *Remaining Title VII Allegations*

Crumpton makes additional contentions as part of his first claim for relief for racial discrimination. These include claims that PM refused to negotiate contracts which would eliminate discriminatory policies and practices, that PM failed to take affirmative action to correct these policies and practices and practices, and that PM deprived Crumpton of his Fourteenth Amendment right to equal protection of the laws through its acts of discrimination. Defendants argue that these allegations do not state a cognizable claim under Title VII. In his response, Crumpton concedes that this is true with regard to the affirmative action and Fourteenth Amendment claims. Crumpton provides no authority to contradict Defendants' assertion that Title VII does not require a private employer to negotiate contracts to eliminate discrimination.

Additionally, Crumpton alleges that PM maintained "policies and practices with respect, but not limited to, wages, job assignments, insurances, and other terms and conditions of employment which unlawfully operate to deny equal opportunity to Afro–Americans, including Plaintiff because of their race." (Compl. ¶ 19 B.) Defendants argue that these allegations amount to a "disparate impact" claim. Consequently, they maintain that Crumpton has failed to establish a prima facie case of disparate impact because he has not demonstrated any PM employment practice which has a substantial adverse impact on African–Americans. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1161 (10th Cir. 1991). In his response, Crumpton effectively concedes this point. Therefore, I do not consider issues of disparate impact.

### IV. *Conclusion*

I conclude that Crumpton has failed to establish a prima facie case with regard to any aspect of his Title VII claim. Accordingly,

IT IS ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED; and

IT IS FURTHER ORDERED THAT Defendants' Motion to Strike the Affidavit of Kenneth W. Sorg is DENIED as moot.