Margaret F. GARD, Plaintiff,

v.

TELETRONICS PACING SYSTEMS, INC., including Its Successors and Assigns, Defendant.

No. 93–K–1416.

United States District Court, D. Colorado.

Aug. 9, 1994.

Lee T. Judd, Brian L. Lewis, Denver, CO, for plaintiff.

Laura A. Wing, Samuel M. Ventola, Rothgerber, Appel, Powers & Johnson, Denver, CO, James A. Gale, McDermott, Will & Emery, Miami, FL, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

### I. *Introduction*

Plaintiff Margaret Gard filed her complaint against Defendant Teletronics Pacing Systems ("TPS") on July 2, 1993, asserting an age discrimination claim under the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and a sexual harassment claim under 42 U.S.C. § 2000e et seq. Additionally, Gard asserts seven state law claims against TPS: common law fraud; negligent misrepresentation; violation of Colorado statutes; breach of contract; promissory estoppel; outrageous conduct; and breach of implied covenant of good faith and fair dealing.

TPS seeks dismissal of Gard's seven state law claims for lack of supplemental jurisdiction under 28 U.S.C. § 1367. TPS argues Gard's state law claims predominate over the federal claims because they do not stem from

a common nucleus of facts and they raise novel and complex issues of state law.

The obligation to exercise supplemental jurisdiction over state law claims sweeps broadly under § 1367. Under the present circumstances, I am permitted to decline to exercise supplemental jurisdiction over Gard's state law claims only if they substantially predominate over Gard's federal claims or raise novel or complex issues of state law.

Because I find Gard's state law claims, other than the one for outrageous conduct, do not predominate and involve neither novel nor complex issues of state law, I deny TPS's motion to dismiss. For reasons separately discussed I will grant the request for dismissal of the claim for outrageous conduct.

## II. *Facts*

On April 26, 1992, Gard began employment with TPS as a sales representative in training. Gard interpreted the introductory letter from TPS after her being selected for the Training Program as a promise of future employment.

TPS alleges it was a temporary position, with no promise of future employment. Further, TPS alleges Gard's temporary position was "at will", as evidenced by Gard's signature on an Employment Acknowledgment Form expressly stating the Employment Handbook was not a contract. Def.'s Reply. Br. at 3.

Gard alleges she was told she would be in the TPS sales training program for approximately six months in preparation for a sales representative position to which she would be assigned upon successful completion of the training program. She understood sales positions were not with TPS itself, but rather the individual completing the training program would then be eligible for hire by associated outside organizations. Pl.'s Resp. Def.'s Mot.Dismiss at 4.

On or about September 12, 1992, Gard attended an interview with Thomas Brown, one of the chief operating officers of TPS. During the interview, Gard claims Brown told her she did not "fit his image." *Id.* Gard asserts Brown went on to say the company wanted to have young people just out of college with only one or two years of experi-ence in business, so the company could mold them as it saw fit. *Id.* Gard claims she understood Brown's remarks to indicate clearly the company believed Gard was too old for a full-time sales marketing position. *Id.* Gard also claims Brown stated he did not think Gard could develop satisfactory sales relationships with doctors because she was a woman, and while there were territories available for persons exiting the company's sales and marketing program, he did not believe any would be available for her. *Id.*

## III. *Discussion*

### A. *Judicial Improvements Act*

■ As part of the Judicial Improvements Act of 1990, P.L. No. 101–650, 104 Stat. 5089 (Dec. 1, 1990) (the "JIA"), Congress combined the doctrines of pendent and ancillary jurisdiction under the rubric "supplemental jurisdiction." *James v. Sun Glass Hut of California,* 799 F.Supp. 1083, 1084 (D.Colo. 1992) (Babcock, J.); *see LaSorella v. Penrose,* 818 F.Supp. 1413, 1415 (D.Colo.1993) (Kane, J.). Applying to all cases filed after December 1, 1990, the new statute states in part, "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). District courts may decline to exercise supplemental jurisdiction over a state law claim only if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

■ Some courts view the JIA as a codification of *United Mine Workers v. Gibbs,* which favored the dismissal of pendent state claims when (1) considerations of judicial economy, convenience and fairness to litigants were not present; (2) a surer-footed reading of state law could be obtained in the state court; (3) state issues predominated in

terms of proof, scope of issues raised or comprehensiveness of remedies sought; or (4) divergent legal theories of relief were likely to cause jury confusion. 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See, e.g., Walter Fuller Aircraft v. Republic of Philippines*, 965 F.2d 1375, 1389 n. 13 (5th Cir.1992); *Promisel v. First American Artificial Flowers*, 943 F.2d 251, 254 (2d Cir.1991). Others, including myself, read the JIA to expand greatly the federal courts' supplemental jurisdiction. *See LaSorella*, 818 F.Supp. at 1415–16 (citing *York Research Corp. v. Landgarten*, 1992 W.L. 373268 *3 (S.D.N.Y.1992); *ITT Commercial Finance Corp. v. Unlimited Automotive, Inc.*, 814 F.Supp. 664, 666 (N.D.Ill.1992)).

One of the primary reasons for the latter conclusion is the JIA retained only two of the four *Gibbs* discretionary factors. *LaSorella*, 818 F.Supp. at 1415. The first *Gibbs* factor, the absence of judicial economy, convenience and fairness to litigants, was abandoned entirely, as was the fourth, jury confusion caused by divergent state and federal claims. *Id.* The second and third *Gibbs* factors, the novelty or complexity of state issues and state issue predomination survive intact. *Id.* Thus, I conclude the JIA sweeps broadly, mandating the exercise of supplemental jurisdiction unless one of the exceptions in § 1367(c) is met.

Whether to grant or deny TPS's motion to dismiss turns on the application of the JIA to the claims in this case. Under my interpretation of the JIA, I am required to exercise supplemental jurisdiction in the present action.

B. *There is no basis under the JIA to decline to exercise supplemental jurisdiction in this case*

The heart of Gard's response to TPS's motion to dismiss is that her state law claims are not subject to any of the exceptions in the JIA which would allow the court to decline supplemental jurisdiction. Gard contends numerous cases, specifically cases involving ADEA claims, support her position that state law claims arising out of terminations or single events such as the instant case are properly subject to the exercise of supplemental jurisdiction. Pl.'s Resp.Def.'s Mot.Dismiss at 17. I agree.

Gard relies on *Jones v. Intermountain Power Project*, 794 F.2d 546 (10th Cir.1986) and *Kachel v. City of Pueblo*, 732 F.Supp. 1109 (D.Colo.1990) as supporting the exercise of supplemental jurisdiction in this case. In *Jones*, an employee was terminated for allegedly sexually harassing a female employee, and brought claims for violation of Title VII of the Civil Rights Act of 1964 and state law claims for tortious interference with an employment contract and breach of an employment contract. The Tenth Circuit stated it was "unwilling to require Title VII claimants who have pendent state claims to bifurcate their cases." *Id.* at 553. Because the plaintiff's state and federal claims arose out of a common set of operative facts and because the jury rendered its verdict on the state claims before the trial court issued its opinion on the Title VII claim, the Tenth Circuit concluded judicial economy, convenience and fairness necessitated the exercise of pendent jurisdiction. *Id.* at 549–50.

In *Kachel*, plaintiff brought Title VII and state breach of contract claims against the City of Pueblo alleging employment discrimination. Judge Carrigan denied the City's motion to dismiss plaintiff's state law claims for lack of pendent jurisdiction, stating "while additional evidence will be needed to adjudicate the breach of contract claim, that claim is derived from a common nucleus of operative fact." 732 F.Supp. at 1111. The court concluded judicial economy, convenience and fairness to the litigants would be served by hearing all related claims in one action. *Id.* at 1110.

Since the enactment of the JIA, both Judge Babcock and I have addressed the limits of courts' discretion to decline supplemental jurisdiction. *See James, supra*, 799 F.Supp. at 1084 (citing, *inter alia*, 13B C. Wright, A. Miller, E. Cooper *Federal Practice and Procedure* § 3567.3 at 46 (2d ed. Supp.1994)); *LaSorella, supra*, 818 F.Supp. at 1416 (same). Unless the state law claims predominate or involve novel or complex issues of state law, courts should accept supplemental jurisdiction.

### 1. *State claim predomination*

■ In *James,* Judge Babcock recognized the expansionary impact of the JIA, but declined to exercise supplemental jurisdiction because the state claims substantially predominated over the lone federal age discrimination claim in that case. *James,* 799 F.Supp. at 1084. TPS argues *James* is controlling.

The state law claims dismissed in *James* are identical to those in the present action: breach of employment contract, reliance on misrepresentation concerning job security, and bad faith and outrageous conduct. In determining the state law claims predominated in *James,* Judge Babcock noted the contract and fraud claims involve elements of proof distinct and foreign to the age discrimination claim and would substantially expand the scope of the case. *Id.,* 799 F.Supp. at 1085. Further, the state law claims involved damages not available under the ADEA, again causing substantial expansion of the action. *Id.* TPS argues the same analysis applies here.

The analysis, however, is fact-driven and I find the facts of this case different from those in *James.* Here, consideration of the state law claims would not expand the scope of the case or substantially predominate over Gard's Title VII and ADEA claims. With the exception of the outrageous conduct claim, which I discuss separately below, Gard's state claims do not require elements of proof foreign to the federal claims.

The facts of this case are more like those I considered in *LaSorella, supra,* when I denied a motion to dismiss for lack of supplemental jurisdiction where an employee brought both state law and federal ADEA claims against his former employer, Penrose St. Francis Health Care System ("Penrose"). In that case, plaintiff LaSorella claimed Penrose did not re-hire him after its reorganization because he was 59 years old, even though he was entitled to hiring and transferring preference under Penrose's internal employee handbooks and policies. *LaSorella,* 818 F.Supp. at 1414. The complaint stated two claims for relief, one under the ADEA, the other under state common law for breach of contract and promissory estoppel. On the employer's motion to dismiss the state law claims, I found LaSorella's state law claims did not fall within any of the class of state claims over which federal courts may decline supplemental jurisdiction under the JIA, and denied the motion.

I found the state law claims related to the federal claim because the evidence involved in the state claim would be substantially the same in scope and source. *Id.* at 1416. The finding that state and federal law claims arise from the same set of common facts required me to exercise supplemental jurisdiction. *Id.*

The facts here are the same as those deemed dispositive in *LaSorella.* All Gard's claims arise out of her termination by TPS. It is undisputed that a majority of the facts necessary to prove Gard's claims, and the exhibits in support thereof, would require an identical proceeding in state court. The conversation between Gard and TPS employee Brown is central to proving the allegations of sexual harassment, age discrimination, and the state law claims. Based on the facts as alleged by Gard, I must exercise supplemental jurisdiction.

■ The test for predominance is an analysis of the facts which must be proved relative to each claim. If these facts are similar or identical, it cannot be said the state law claims predominate over the federal claim or the scope of the case would be expanded. *Ritter v. Interstate Gas Co.,* 593 F.Supp. 1279, 1281 (D.Colo.1984). The common nucleus of operative facts test does not require the facts giving rise to the state and federal claims to be identical. *Id.* In *Ritter,* the defendant employer moved to dismiss a former employee's supplemental state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Judge Carrigan held even if the court had the power to hear the state claims, it does not follow that they must be heard. He decided not to hear the pendent claims out of concern he would be expanding Colorado state employment law. *Id.* at 1283.

*Ritter* is distinguishable. In exercising supplemental jurisdiction here, there will be no advancement or expansion of Colorado

law. I repeat a statement made in *LaSorella:* "I am not entering an unsettled field of state law where my decision may be of first impression. Rather, there is a bedrock of precedent to guide my decision. Therefore, I need not refuse jurisdiction based on the concept of judicial comity between the states and the federal courts." *LaSorella,* 818 F.Supp. at 1416.

2. *Novel or complex issues of state law*

■ Another exception to the rule favoring the exercise of supplemental jurisdiction occurs when state law claims raise novel and complex issues of state law. 28 U.S.C. § 1367(c)(1). TPS argues dismissal of Gard's claims is warranted because those claims raise novel and complex issues of state law with the effect of "modifying and reversing Colorado law." Def.'s Mot.Dismiss at 3. TPS claims Gard is attempting to show an express or implied contract was created through the TPS employment manual, when Colorado law is to the contrary. *Id.*

The very existence of established Colorado law on the issue of implied contracts in employment manuals defeats TPS's argument. *See LaSorella,* 818 F.Supp. at 1416 ("plethora" of established state law dealing with plaintiff's nonfederal claims defeated "novel or complex issue of state law" argument). TPS believes exercising jurisdiction over Gard's state law claims would jeopardize Colorado law. Colorado law is nurtured, however, not jeopardized by its enforcement by the federal courts. Whether Gard's claims can survive a motion for summary judgment presently is conjectural, but for purposes of the instance motion, the complaint must be taken at face value.

C. *Gard's Outrageous Conduct Claim*

■ Gard's outrageous conduct claim is dismissed because, almost by definition, the facts necessary to prove that claim cannot be similar or identical to, nor can they be said to share a common nucleus of operative facts with, the federal statutory claims over which I have original jurisdiction. The converse is more accurate. Beyond cavil a claim for outrageous conduct expands the scope of inquiry in this case. The claim is not some sort of froth to be lathered over other claims,

but consists of discrete elements established in law to prevent the intentional infliction of mental suffering. It is not meant to be an incantation to augment damages. Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted. *See Price v. Federal Express Corp.,* 660 F.Supp. 1388, 1396 (D.Colo.1987). For these reasons, I dismiss, without prejudice, Gard's common law claim for outrageous conduct.

D. *Equitable Considerations*

■ Gard asserts prejudice if any state law claims are dismissed. Pl.'s Resp.Def.'s Mot.Dismiss at 16. She argues dismissal may prevent her from asserting those claims in state court under the doctrine of *res judicata. Id.* at 24 (citing *Shaoul v. Goodyear Tire & Rubber,* 815 P.2d 953 (Colo.App. 1990)). Her concern is misplaced. In *Shaoul,* plaintiff's state law claims for breach of contract, wrongful discharge, and discrimination in violation of 42 U.S.C. § 1981 were dismissed on their merits. Where, as here, a state law claim is dismissed for lack of supplemental jurisdiction, the doctrine of *res judicata* would not preclude plaintiff from bringing that claim in state court.

Finally, Gard contends TPS's motion is moot. *Id.* at 24–25. Because she moved from Colorado to New Mexico after filing her complaint and the amount in controversy exceeds $50,000, Gard claims diversity jurisdiction now exists pursuant to 28 U.S.C. § 1332 providing an alternative basis for federal jurisdiction over her claims. She argues a dismissal of her state law claims here would be moot because she could reassert them in federal court based on diversity of citizenship. I am not convinced she could do so.

■ Whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced. *E.g., Pride v. Kansas Highway Patrol,* 793 F.Supp. 279, 283 (D.Kan. 1992), *citing Johnston v. Cordell Nat'l Bank,* 421 F.2d 1310, 1311 (10th Cir.1970). *See*

generally 13B Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3608 at 448–59 (2d ed. 1984). If diversity of citizenship did not exist when the action was commenced, it cannot be created by a later change of domicile by one of the parties or some other event. *Pride*, 793 F.Supp. at 283; Wright, Miller & Cooper at 458.

I will not speculate how this rule might affect a reassertion by Gard of her outrageous conduct claim in this court at a later date. I will say, however, from the pleadings and briefs before me, it is by no means evident a viable claim for outrageous conduct can be plead within the strictures of Rule 11, Fed.R.Civ.P.

## IV. *Conclusion*

In deciding issues of supplemental jurisdiction, the pivotal questions are whether federal claims and state claims arise from the same nucleus of common facts and whether the state claims raise novel and complex issues of state law. In this case, Gard's claims involve common facts and do not raise complex or novel issues of state law. With the exception of Gard's claim for outrageous conduct, I have supplemental jurisdiction over the state law claims. The outrageous conduct claim is dismissed.

Our judicial system encompasses both state and federal courts. It makes no sense to occupy both with duplicative proceedings. Further, the state claims Gard raises are well settled in Colorado; they are neither complex nor novel issues of state law.

For these reasons I deny TPS's motion to dismiss state law claims for common law fraud; negligent misrepresentation; violation of Colorado statutes; breach of contract; promissory estoppel; breach of an implied covenant of good faith and fair dealing; and grant dismissal of the claim for outrageous conduct.