Mary Jane DAVIES, Plaintiff,

v.

PHILIP MORRIS, USA, a Virginia Corporation, and Richard Mefford, Defendants.

Civ. A. No. 93–K–602.

United States District Court, D. Colorado.

Oct. 17, 1994.

Richard S. Shaffer, Aurora, CO, for plaintiff.

James Scarboro, Lewis Steverson, Arnold & Porter, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Before me on Defendants' motion for summary judgment is another employment discrimination action brought by a former Philip Morris, USA ("Philip Morris") sales representative fired after allegedly falsifying cigarette sales records.[1] While Plaintiff's claims in the present action are similar to those pled and dismissed on summary judgment in *Crumpton*, the facts vary significantly and preclude a similar disposition. For the reasons set forth below, I deny Defendants'

motion for summary judgment on Plaintiff's Title VII, outrageous conduct, and fraud claims. I grant summary judgment on Plaintiff's claim for tortious interference with contractual relations.

### I. *Summary Judgment Standards*

Rule 56(c) of the Federal Rules of Civil Procedure permits entry of summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In reviewing the present motion, I must accept as true all of the evidence presented by Davies as the non-movant and draw all justifiable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only where the record, taken as a whole, could lead no rational trier of fact to find in Davies's favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. *Facts*

Viewing the evidence in the light most favorable to Plaintiff, I rely on the following facts. Plaintiff Mary Jane Davies is a 41 year-old married mother of five children. She claims she worked every day of her adult work life until she was terminated by Philip Morris. Philip Morris hired Davies in February of 1987. She worked for the company as a sales representative until October 12, 1992, when she was fired for allegedly falsifying documents. She denies she falsified documents, and denies any wrongdoing.

Her regular performance appraisals while at Philip Morris ranged from "commendable" in 1988 to "superior" in 1989 and 1990. *See* Pl.'s Resp.Defs.' Amended Mot.Summ.J., Exs. 2–5. The copy of Davies's 1991 appraisal attached to her response is incomplete, but the marks indicated are consistent with those received the previous two years. She was specifically commended for exceeding sales

---

**1.** An earlier case, *Crumpton v. Philip Morris, USA*, No. 93–K–123, was settled after I entered summary judgement in defendants' favor on plaintiff's Title VII claims. *See* 845 F.Supp. 1421 (D.Colo.1994).

goals, being "very professional," "always willing to participate in special events," being "at first call early each day," and having a "100% attendance record." *Id.*, Ex. 6.

Philip Morris section sales director Barry Anderson described Davies as a "good sales representative" who was "upbeat," "enthusiastic," made "excellent calls" on her territory, and had an "excellent rapport" with all of her accounts. Anderson Dep. at 82:21–25 (attached as Ex. F to Defs.' Amended Mot. Summ.J.). In affidavits submitted by Davies, the manager of one of her accounts, a former colleague, and a former supervisor describe Davies in the same glowing terms. *See* Pl.'s Resp.Am.Mot.Summ.J., Exs. 7, 11; Pl.'s Surreply, Ex. 22.

Despite her qualities and performance, Davies claims she was treated as a "second class citizen" at Philip Morris. She maintains she received fewer training opportunities than male sales representatives and was not told of opportunities to move up in the company. In 1988, despite three requests by her supervisor to management, she was passed over for Philip Morris's Management Apprentice Program (MAP) in favor of at least two lesser qualified men, Bill Stahl and Vince Minnick. *See* Pl.'s Surreply, Ex. 22 (Crumpton Aff.) at 2. These individuals were under the supervision of Defendant Richard Mefford.

In 1988, Mefford approached Davies about "taking her under his wing" and Davies was transferred to his supervision. Davies claims Mefford would not accompany her in the field, rarely returned her phone calls, and generally treated her in a mean and demeaning manner. Pl.'s Resp. Amended Mot. Summ.J. at 5–6, Ex. 1 (Davies Aff.) at 5. He displayed favoritism toward male sales representatives, accompanying them in the field, letting them leave work at 3:00 p.m. on Fridays to play on all-male company softball teams, and leave early for special events where they were permitted to drink beer in the stands while women were expected to work the booths. *Id.*

These allegations are corroborated by the affidavits of former Philip Morris sales representatives Susan Wolf and Holly Brummett. Pl.'s Resp.Am.Mot.S.J., Exs. 12–13;

Pl.'s Surreply, Ex. 25. If there were choices of better hours or better accounts for overtime pay, they would be assigned to the men. Wolf Aff. at 2. Wolf states Mefford's response was these men had to support their families. *Id.*

On September 12, 1989, Barry Anderson accompanied Davies for a day in the field. During the course of that day, Davies complained of Mefford's treatment and the company's failure to place her in the MAP program. Anderson sent Davies a letter the following day, stating he enjoyed working with her and commending her for being "aggressive" and "totally ha[ving] the company's best interests at heart." Pl.'s Resp.Amended Mot.Summ.J., Ex. 14. He expressed appreciation for the "frank conversation" they had "concerning [her] career as well as other issues," and assured her the conversation "did not fall on deaf ears." *Id.* Upon Anderson's request, Davies was finally placed in the MAP program. During the entire time she was with the company, Davies was the only woman in three Denver divisions to have been placed in MAP. Pl.'s Surreply, Ex. 22 (Crumpton Aff.) at 3.

Even after Davies was placed in MAP, Mefford's treatment of her did not improve. Pl.'s Resp.Am.Mot.S.J., Ex. 1 (Davies's Aff.) at 4. At a sales meeting in September of 1992 attended by Anderson, Davies again expressed displeasure with Mefford's management style. *Id.;* Pl.'s Resp. at 6. Another female sales representative, Denise Belton, also complained about Mefford at this meeting. Pl.'s Resp. at 6. Anderson was sufficiently concerned to ask district manager Mike Kronschnabel to meet with Mefford. *Id.*

In late September, early October of 1992, Davies was working with a new sales promotion for Marlboro cigarettes in a territory to which she had been assigned for six months. She had difficulty understanding the program, which involved the use of special displays and "gratis" (free product). Pl.'s Resp.Amended Mot.Summ.J., Ex. 1 at 5. On September 28, 1992, Davies made a sales call to Account 28, a Conoco/Texaco station managed by Lisa Douglas. *Id.* She comput-

ed the gratis due Account 28 for participating in the promotion, arriving at a figure of $131, which she recorded in several places on her Call Summary[2] sheet. Believing the amount to be incorrect, Davies crossed out the sum where it appeared on the Call Summary and told Douglas she needed to check with her boss before giving her the gratis. *Id.* Ultimately, no gratis was paid Account 28. Douglas, fearing theft of the product, moved the display from the floor to the counter, which disqualified it from the promotion. *Id.* Douglas submitted an affidavit in support of Davies's claims and corroborates Davies's recollection of the events on September 28th in every respect. *See* Pl.'s Resp.Amended Mot.Summ.J., Ex. 7 (Douglas Aff.) at 1–2.

Davies called Mefford at his home on September 30, 1992 and advised him of the confusion surrounding the $131 gratis computation.[3] She told Mefford she had entered $131 on her Call Summary, but had not paid it because it seemed too high. Davies claims she told Mefford she left the $131 on the Call Summary despite not having paid the gratis so she would have a record of the amount for further discussions. *Id.* at Ex. 1, p. 5. Davies states Mefford responded by stating, "That's fine, do what you have to do and take care of it." *Id.* According to Davies, Mefford specifically knew she had written down $131 in gratis but that she had not given it to Douglas. She understood Mefford's response to acknowledge this fact and to authorize her to indicate in her Call Summary the payment of gratis as a reminder when gratis was due, even if it had not yet been paid. *Id.* at 5–6.

After her conversation with Mefford, Davies wrote "Corrected gratis error after talking to you 9/30" on the bottom of her September 28, 1992 Call Summary sheet. Pl.'s Resp.Am.Mot.Summ.J. at 9 (referencing 9/28 Call Summary, attached as Ex. 8).

Mefford disputes Davies's version of the events on September 30, 1992. Defs.' Am. Mot.Summ.J., Ex. B (Mefford Aff.) at ¶ 7. He claims he had attempted to locate Davies all day on September 30th to "observe her" while she worked with her accounts, but that he had been unable to do so. *Id.* He acknowledges Davies phoned him that evening at home, but states the purpose of her call was to ask how much gratis she was supposed to give her accounts for the Marlboro promotion. *Id.* He states that after he told her, Davies informed him she had made a mistake on Account 28. *Id.* Mefford understood Davies had given Account 28 more gratis than she was supposed to, and that she intended to return to the account the following day to retrieve the excess gratis. *Id.*

The following day, after their telephone conversation, Mefford states he again tried to locate Davies in the field to no avail. *Id.* at ¶ 8. He then drove to Account 28 to determine whether Davies had retrieved the excess gratis. *Id.* On a Call Contact Verification form dated October 6, 1992, Mefford noted "Lisa [Douglas] told me she hasn't been given any gratis." Pl.'s Resp. Am.Mot.Summ.J., Ex. 9.[4] Mefford examined Davies September 28 Call Summary and "discovered" Davies had indicated she had given gratis to Account 28. *Id.*

Suspicions aroused, Mefford states he examined Davies's summaries for September 30 and October 1, 1992, contacting every account to which Davies had reportedly given gratis or coupons. Defs.' Am.Mot.Summ.J., Ex. B at ¶ 9. Mefford claims his investigation revealed six instances where receipt of gratis or coupons could not be verified or was disputed by managers at the accounts. *Id.* Davies contends she was "set up," a contention later supported by one of the managers Mefford visited that day.[5] Nevertheless,

---

**2.** Philip Morris sales representatives use daily Call Summaries to record visits to accounts. These forms contain spaces to record displays and promotions placed, types of sales, amounts paid accounts, and managers' signatures. There is space at the bottom of each Call Summary for comments, which Davies used for notes.

**3.** Davies claims she had to call Mefford at home because he would not return her calls at work. Pl.'s Resp. at 8.

**4.** Douglas denies ever speaking with Mefford about the $131 gratis or Mary Jane Davies. Douglas Aff. at 1 (Ex. 7, Pl.'s Resp. Am.Mot.Summ.J.).

**5.** In the context of the present lawsuit, Davies hired retired Denver Police Officer Truman Leu-

Mefford prepared and sent a memorandum detailing his findings to Barry Anderson and Philip Morris's assistant region personnel administrator in Los Angeles.

On October 12, 1992, Mefford and his immediate supervisor Mike Kronschnabel confronted Davies with the results of Mefford's investigation. Davies strongly denied wrongdoing, and offered to drive to the various accounts with Mefford and Kronschnabel to disprove their allegations. Pl.'s Resp. Am.Mot.Summ.J., Ex. 1 at 1. She states the men advised her it would be no use. This was a new territory for her and counter people and managers often changed. *Id.* Mefford disputes this, stating he, Kronschnabel, and Davies got in a car to go to the various accounts, but that Davies asked them to turn the car around and return to the office because it was "no use." Defs.' Am. Mot.Summ.J., Ex. B at ¶ 13. When they returned to the office, Mefford and Kronschnabel discussed the situation and determined Davies's employment should be terminated for falsification. *Id.* at ¶ 14.

As though these facts were not sufficiently intriguing, there is evidence in the record that Mefford himself has falsified documents while employed by Philip Morris. *See* Anderson Dep. at 80:24–81:25 (attached as Ex. 2, Pl.'s Opp.Defs.' Mot.Prot.Order) (admitting Mefford had been disciplined for falsifying the date on an employee's audit form). When questioned about Mefford's conduct, Anderson testified Mefford altered the date because "he had previously done the audit and wanted to do this individual's performance appraisal and basically terminate the individual for poor performance." *Id.* at 81:9–14. Anderson also admitted Mefford initially denied falsifying the date, and that Mefford received a written warning and a reduction in performance appraisal rating because of his conduct. *Id.* at 81:18–82:6. Mefford was not fired.

### III. *Merits*

In her Complaint, Davies asserts four claims for relief: (1) discrimination based on sex under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") (against Philip Morris); (2) fraud and deceit (against Philip Morris and Philip Morris employee Richard Mefford); (3) intentional infliction of emotional distress (against Mefford, only); and (4) tortious interference with contractual rights (same). Defendants contend Davies actually is asserting seven employment discrimination claims and three state law claims, each of which fails as a matter of law. Defendants maintain they are entitled to summary judgment on Davies's Title VII claims because some fail to state cognizable causes of action, and because Davies cannot establish a *prima facie* case with respect to others. They also contend Davies cannot satisfy certain necessary elements of her three state law claims.

### A. *Davies's Title VII Claim(s)*

There is some confusion as to the nature and number of Davies's Title VII claim(s). The Complaint in this action asserts only one claim for relief under Title VII, titled "Sex Discrimination v. Defendant Corporation." In her Complaint, Davies alleges numerous examples of sex discrimination, including unlawful discharge; failure to promote or train; refusal to remedy or eliminate discriminatory practices; and retaliation. *See* Pl's Compl., ¶¶ 16–20. In an apparent "divide and conquer" strategy, Defendants set out these allegations as separate Title VII claims, then argue each fails as a matter of law. *See* Defs.' Am.Mot.Summ.J. at 2.

Davies does not challenge Defendants' "seven Title VII claims" argument directly. She frames her Title VII action as a single claim for unlawful discharge—supported by evidence of discriminatory training, pro-

---

thauser to "investigate" Mefford's investigation. Leuthauser interviewed Lazell Petty, one of the managers of Davies's allegedly falsified accounts, who disputed Mefford's conclusion. *See* Leuthauser Letter, acknowledged and signed by Lazell Petty (Ex. 12, Pl.'s Resp.Am.Mot.Summ.J.). According to Petty, it is common practice for cigarette sales representatives to place a display in his liquor store one day and then return with the gratis or product owed at a later date. Petty states while Davies was his representative, he always was given the gratis he was due. Petty told Leuthauser he believed someone was "out to get" Davies from inside Philip Morris, and stated when Mefford questioned him about Davies, Mefford was uninterested in hearing the complete circumstances and "cut him off" when he tried to explain. *Id.*

motion, and termination practices at Philip Morris—but also maintains she has stated a *prima facie* case for three additional Title VII claims. *Compare* Pl.'s Resp. Am.Mot.Summ.J. at pp. ii, 19–24 *with* Pl.'s Surreply at pp. 3–4.

Both sides confuse the issue. This is clearly a wrongful discharge case where Plaintiff claims she was fired for discriminatory reasons and Defendants say she was not. The dispute revolves around the question of pretext: Did Philip Morris and Richard Mefford fire Davies for falsifying documents, or was this an excuse behind which Defendants hid illegitimate motives? The issue is inherently factual. Given the facts presented and drawing all inferences in Davies's favor, Plaintiff's claim for wrongful discharge is one for the jury.

### 1. *Analytical Framework*

The purpose of Title VII is to protect the rights of certain categories of individuals to be free of discrimination. It provides, in pertinent part:

> It shall be unlawful for an employer—
>
> (1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] ... sex.

42 U.S.C. § 2000e–2(a)(1) (1988 & Supp. III 1992).

■ To prevail on a claim of sex discrimination under Title VII, a plaintiff must prove, either directly or indirectly, that her sex was a motivating factor for the employment action of which she complains. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (construing 42 U.S.C. § 2000e–2(m)); *Texas Dept. Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Direct evidence includes oral or written statements on the part of a defendant showing a discriminatory motivation for that defendant's actions; indirect or circumstantial evidence includes proof of a set of circumstances allowing a reasonable trier of fact to believe sex was a motivating factor in the defendant's actions.

■ Where there is inadequate direct evidence of discrimination, the United States Supreme Court has established a three-step burden-shifting format whereby a plaintiff may prove it indirectly. *McDonnell Douglas,* 411 U.S. at 801–04, 93 S.Ct. at 1823–25; *Burdine,* 450 U.S. at 252–56, 101 S.Ct. at 1093–95. This format has been adopted by the Tenth Circuit. *See Cone v. Longmont Hosp.,* 14 F.3d 526 (10th Cir.1994); *E.E.O.C. v. Flasher,* 986 F.2d 1312, 1316 (10th Cir. 1992). The first step of the *McDonnell Douglas* framework requires the plaintiff to prove a *prima facie* case of discrimination. The central inquiry in evaluating whether plaintiff has met this initial burden is whether the circumstantial evidence is sufficient to create an inference (i.e., rebuttable presumption) that the basis for the challenged employment decision was an illegal criterion. *Halsell v. Kimberly–Clark Corp.,* 683 F.2d 285 (8th Cir.1982), *cert. denied* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

■ Once plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a facially nondiscriminatory reason for its employment decision. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824, *modified by Flasher,* 986 F.2d at 1316, n. 4 (changing "nondiscriminatory" to "facially nondiscriminatory" because no examination is made at this point of whether reason given is pretextual or unequally applied). Defendant need not litigate the merits of its proffered reason, but must state it specifically and clearly. *Flasher* at 1316 (citations omitted). Once the defendant sets forth a facially nondiscriminatory reason for its action, the plaintiff assumes the normal burden of any plaintiff to prove her case. *Id.*

■ Contrary to Defendants' suggestion in this case, the elements of a *prima facie* case are flexible and are not to be applied rigidly. *Cone,* 14 F.3d at 530 n. 2, (citing *Schwager v. Sun Oil Co.,* 591 F.2d 58, 61 n. 1 (10th Cir.1979) and *Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1093 n. 6); *see McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In a wrongful discharge case, plaintiff meets her burden if she proves (1)

she is a member of a protected class; (2) she was discharged; and (3) her sex was a motivating factor in that discharge.

■ The entire purpose for the three-step framework in *McDonnell Douglas* is to provide a basic "order of presentation of proof" so the controversy can be brought into focus. *Carey v. United States Postal Service,* 812 F.2d 621, 623 (10th Cir.1987), *quoted in Flasher,* 986 F.2d at 1316–17. It was never intended to provide a mechanistic approach to what ultimately becomes a straightforward trial about motive. *Flasher* at 1317. In the final analysis, the trier of fact is to determine whether plaintiff was the victim of intentional discrimination based upon protected class characteristics. *Id.* (citations omitted).

2. *Applying the Legal Framework to Davies's Title VII Claim*

■ To defeat the present motion for summary judgment, Davies must establish a *prima facie* case of sex discrimination, and, because Defendants assert a facially nondiscriminatory reason for her termination, she must also present evidence that creates a genuine question as to whether this reason is pretext. *See Cone,* 14 F.3d at 530 (citing *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1121–22 (10th Cir.1991)).

*Davies's prima facie case.*

Defendants concede the first two elements of Davies's *prima facie* case: Davies is a member of a protected class and she was fired. The only question is whether her sex was a motivating factor in Defendants' decision to fire her.

■ To satisfy this requirement, Davies need only create an inference that the basis for her firing was the fact she is a woman. *MacDonald,* 941 F.2d at 1119 (discriminatory discharge based on age) (citing

*Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094). She may do so by proffering credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, *even if this is disputed by her employer.*[6] *MacDonald,* 941 F.2d at 1121.

■ Davies has met her burden here. She received excellent performance appraisals while working for Philip Morris and was described by management, colleagues, and clients as "professional," "responsive," "aggressive," and having "the interests of the company at heart." The record shows she consistently met or exceeded sales goals. She was the only woman in Philip Morris's three Denver offices to have been placed in MAP. Nevertheless, she was fired. Under analysis set forth in *MacDonald,* I conclude Davies has made a *prima facie* showing that her firing was discriminatorily motivated.

*Pretext*

■ Defendants maintain Davies was fired not for discriminatory reasons, but for falsifying documents. Davies counters this reason is pretext. Both sides argue vociferously the other is lying, citing affidavits, private investigator reports, and other evidence to "prove" their points. All that is required to defeat the present motion for summary judgment, however, is "enough evidence to support an inference that the employer's reason is merely pretext, by showing either 'a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.' " *Cone,* 14 F.3d at 530 (quoting *MacDonald,* 941 F.2d at 1121–22). The evidence presented by Davies through the affidavits of Susan Wolf, Holly Brummett, Willie Crumpton, and Lazell Petty—together with Defendants' own admission that Mefford has altered documents in the past to fire an em-

---

**6.** The employer's stated nondiscriminatory reason for the discharge **cannot be considered** at the *prima facie* stage of the *McDonnell Douglas* analysis. *MacDonald,* 941 F.2d at 1119 (reversing district court's entry of summary judgment in favor of defendant because plaintiffs failed to disprove stated reasons for discharge). The rea-

son for keeping the *prima facie* and pretext stages of the analysis separate is to give plaintiff a full and fair opportunity to demonstrate pretext. Short-circuiting plaintiff's case at the *prima facie* stage would frustrate plaintiff's ability to do so. *Id.*

ployee—is more than sufficient to create a genuine issue of fact regarding pretext in this case. Thus, entry of summary judgment in favor of Defendants is precluded.

### 3. *Davies' "Other" Title VII Claims.*

Davies alleges several additional examples of discrimination by Philip Morris. Davies alleges Philip Morris maintained policies and practices that operated to affect women disparately and adversely as well as to deny them equal opportunity with respect to wages, job assignments, insurance, and other terms and conditions of employment. Pl.'s Compl. at ¶ 17(A)–(B). Davies also alleges Philip Morris discriminatorily trained and promoted employees based on sex. *Id.* at ¶ 17(A), (D). Defendants contend these allegations constitute separate causes of action based on "disparate impact" for which Davies has failed to establish *prima facie* cases. *See, e.g.,* Defs.' Am.Mot.Summ.J. at 2, 21–22 (no statistical evidence of a specific Philip Morris employment practice that had a substantial and adverse impact on women).

Davies also alleges Philip Morris refused to negotiate contracts or take affirmative action to correct or eliminate discriminatory policies and practices. Pl's Compl. at ¶ 17(E)–(F). Defendants contend these allegations also constitute separate Title VII claims, but seek judgment on them because they do not state legally cognizable causes of action.

By extrapolating Davies's factual allegations to the concept of separate causes of action and then destroying them, Defendants seek to remove what essentially are factual allegations from consideration on summary judgment. Davies relies on these allegations (and the evidence supporting them) not as separate causes of action, but as indirect proof under the *McDonnell Douglas* framework of Defendants' discriminatory motives in firing her. For this reason, I need not reach Defendants' arguments with respect to these "separate" causes of action.

### B. *Plaintiff's State Law Claims*

### 1. *Fraud*

 Davies's state law claim for fraud and deceit is premised on the following statement made by Mefford during their September 30, 1992 telephone conversation: "That's fine, do what you have to do and take care of it." Pl.'s Resp.Am.Mot.Summ.J. at 25; Pl.'s Surreply at 12–13. Davies claims Mefford knew she had not given Lisa Douglas $131 in gratis; knew she had nevertheless written down $131 on her Call Summary to document her confusion regarding the proper gratis amount and have a record of it for further discussion; and approved it for those purposes. In this context, Davies maintains Mefford's statement constituted a direction, license, and approval of the manner in which she was handling the gratis problem at Account 28. She claims Mefford's statement was a "set up," undertaken in retaliation for complaints she made about Mefford to his superiors, and claims she relied on Mefford's statement to her detriment. Pl.'s Surreply at 13–14.

Defendants maintain this is insufficient to state a cause of action for fraud under Colorado law. Defs.' Am.Mot.Summ.J. at 24–27. They argue Mefford's statement was not a "representation" as that word is defined by Webster, and maintain it had no causal connection to her termination. *Id.* at 25. I reject both arguments out of hand.

 Webster, while an expert lexicographer, is not the final arbiter of legal patois. Under Colorado law, a "representation" need be neither a "description, account, [n]or statement of fact" to be actionable, as Defendants suggest. An actionable "representation" may be oral, written, or consist solely of conduct; the gist of a fraudulent representation is the production of a false impression in the mind of the other party, "the means of accomplishing it are immaterial." *Cahill v. Readon,* 85 Colo. 9, 273 P. 653, 655 (1929); *see generally,* C.J.I.3d 19:3 (1990) (citations omitted). Davies's testimony regarding the nature of her conversation with Mefford, her impression, and his conduct raises a genuine issue of fact with respect to the fraudulent nature of Mefford's "representation."

 Defendants' contention that Mefford's conduct was unrelated to the conduct for which Davies was fired (i.e. marking $131 in gratis before she had given it and falsify-

ing signatures for accounts she indicated received coupons) begs the ultimate factual question in this case and is not susceptible to resolution on a motion for summary judgment. For these reasons, I deny Defendants' motion for summary judgment on Davies's fraud claim.

## 2. *Intentional Infliction of Emotional Distress*

Davies claims Mefford misled her with respect to the $131 gratis Call Summary entries; lied about having spoken with Lisa Douglas; and misrepresented his conversation with Lazell Petty, all for the purpose of firing her. Davies claims these lies, together with the fact Mefford had been disciplined in the past for altering an audit of an employee in order to fire that employee, constitute intentional infliction of emotional distress as that claim is recognized in Colorado. Pl.'s Resp. at 27–29, *citing* Restatement (Second) of Torts § 46 (1965).

Under Colorado law, conduct must be

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo.1988) (internal quotes and citation omitted). Determination of whether the alleged conduct is sufficiently outrageous to satisfy this standard is properly made in the first instance by the court. *Bauer v. Southwest Denver Mental Health Center, Inc.*, 701 P.2d 114, 118 (Colo.App.1985). If the court determines no reasonable person could conclude defendant's conduct was outrageous, summary judgment is appropriate. *Id.*

I have cautioned plaintiffs in the past that outrageous conduct claims are not some sort of "froth to be lathered over" employment discrimination claims for the purpose of augmenting damages. *See, e.g., Gard v. Teletronics*, 859 F.Supp. 1349, 1354 (D.Colo.1994). In this instance, however, I believe Davies's claim is one for the jury and therefore deny Defendants' motion for summary judgment on this issue.

## 3. *Tortious Interference with Contractual Relations.*

Central to a claim for tortious interference with contractual relations is the existence of a contractual relationship. *See* C.J.I.3d 24:1 (1990). Davies does not dispute Philip Morris sales representatives are generally "at will" employees; she claims, however, her "at will" status changed because she was offered an oral contract of employment by Debbie Kronschnabel after her December 11, 1991 performance appraisal. *See* Pl.'s Resp.Am.Mot.Summ.J. at 29. Davies claims Kronschnabel advised her as to what her increase in salary would be for the following year and told her she would continue working for Philip Morris as a sales representative. *Id.* Davies states she accepted the terms of this "offer" by her continued performance. *Id.* Davies's contention is so overreaching it approaches fatuity.

To defeat the presumption of "at will" employment in Colorado, Davies must demonstrate "an express stipulation as to the duration of employment" in exchange for consideration over and above her existing performance. *See Lampe v. Presbyterian Med. Center*, 41 Colo.App. 465, 590 P.2d 513, 514 (1979). Not only does Davies fail to allege additional consideration or the requisite duration element, she also fails to specify what Kronschnabel said or how being advised of one's pay increase changed her status from "at will" to that of a contractual employee. Davies's allegations, even if true, fail as a matter of law to support the existence of an employment contract in which Mefford could have interfered. For this reason, Defendants' motion for summary judgment with respect to Davies's claim for tortious interference with contractual relations is granted.

## IV. *Conclusion*

For the foregoing reasons, Defendants' Amended Motion for Summary Judgment is GRANTED in part and DENIED in part. Defendants' motion for summary judgment on Davies's Title VII, fraud, and intentional infliction of emotional distress claims is DENIED, and Defendants' motion for summary

judgment on Davies's claim for tortious inter-
ference with contractual relations is GRANT-
ED.