### In re STAT–TECH SECURITIES LITIGATION.

Civ. A. Nos. 92–K–1040, 92–K–1994, 92–K–2368, 92–K–2441, 93–K–308 and 95–K–1367.

United States District Court, D. Colorado.

Nov. 6, 1995.

Arnold & Porter, Tim Atkeson, Jonathan B. Boonin, Denver, for Plaintiffs Stat–Tech Liquidating Trust, Pro–Active Partners, and Lagunitas Partners.

Rubner & Kutner, P.C., Lee M. Kutner, Wendy S. Wagner, Denver, for Plaintiff Stat–Tech Liquidating Trust.

Clanahan, Tanner, Downing & Knowlton, P.C., Richard L. Shearer, J. David Arkell, Denver, for Plaintiffs VBW Partners and TRW Family Partners.

Davis & Ceriani, P.C., Gary J. Ceriani, John W. Himmelmann, Denver, for Defendant Schneider Securities, Inc.

Krendl, Horowitz & Krendl, Jay S. Horowitz, Kim E. Ikeler, Denver, for Defendant Hayden H. Thompson.

Bader & Villanueva, P.C., Gerald L. Bader, Jr., Steven M. Fader, Denver, attorneys for Defendant Therese M. Lamb.

Rodger Thornton, pro se.

Raynard M. Fenster, pro se.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Civil Action No. 92–K–1040 is the lead case in a series of actions arising out of the demise and alleged mismanagement of Stat–Tech Corporation ("Stat–Tech") by its officers and directors. These actions—Nos. 92–K–1040, 92–K–747, 92–K–1994, 92–K–2368, 92–K–2441, 92–K–2442, and 93–K–308—were reassigned to me by Chief Judge Matsch in February 1995.[1] Due to the number and flux of the actions and motions, stays of proceedings, the withdrawal and substitution of parties and counsel, and the withdrawal of an earlier reference to Magistrate Judge Pringle, the litigation experienced gridlock. Numerous motions to dismiss and/or for partial summary judgment remain unresolved. Pretrial proceedings, including the issuance of a scheduling order to govern discovery, have been stayed pending resolution of the various motions to dismiss.

I called a status conference in March to familiarize myself with the issues and to expedite case management. At the conference's conclusion, I ordered all existing complaints stricken and amended complaints filed. By May 1995, three of the seven original Stat–Tech actions had either settled (Nos. 92–K–2442, professional negligence and aiding and abetting action against securities brokerage firm and individual broker, and 93–K–308, professional negligence action against former Stat–Tech legal counsel) or were not refiled (No. 92–K–747, shareholder class action against the company). Of the four remaining actions, motions to dismiss and/or for partial summary judgment remain pending only in three.[2]

---

1. An eighth action, No. 95–K–1367, was filed on May 30, 1995 and recently was transferred to me from Judge Nottingham upon the parties' joint motion. To date, two of the seven defendants in that Securities and Exchange Commission enforcement action have filed motions to dismiss.

Briefing on those motions is not yet complete and they will not be considered here.

2. I summarily denied *pro se* defendant Raynard Fenster's motion to dismiss in 92–K–2368 on August 15, 1995.

Ten such motions are now ripe for determination. I deny all but portions of the motion to dismiss filed by defendant Schneider Securities in 92–K–1994.

## I. BACKGROUND

Stat–Tech was formed as part of a blind pool merger in November 1988 by Raynard Fenster. Stat–Tech's principal business was the manufacture of electrostatic dissipation devices. Between 1988 and 1991, it is alleged that Fenster, together with his wife and Stat–Tech director Therese Lamb and director Hayden Thompson, engaged in several schemes to defraud Stat–Tech. These alleged schemes included (1) issuing false and misleading 10–Ks, 10–Qs[3] and press releases; (2) issuing warrants to each other with little or no consideration and illegally sharing restricted stock; and (3) causing Stat–Tech to issue stock as compensation for their services.

In September 1991, Proactive Partners, L.P. ("Proactive") purchased $1.5 million of Stat–Tech stock in a private placement. The offering document upon which the transaction was based allegedly contained false and misleading information. Rodger Thornton, a securities broker with Schneider Securities, allegedly assisted in bringing Proactive and Stat–Tech together for the deal and received a finder's fee from Fenster. In October 1991, Proactive purchased $1 million of allegedly restricted stock from Stat–Tech outside director Thompson. This transaction was brokered by Fenster and Thornton.

Also in October 1991, Thornton sold $560,000 of Thompson's Stat–Tech stock to Tom Waymire, general manager of VBW Partners, Ltd. (VBW) and TRW Family Partnership, Ltd. (TRW). Waymire, too, alleges the information documents on which he based his decision to purchase Thompson's stock were false and misleading. See generally, Status Report, No. 92–K–1040 (filed March 8, 1995). In December 1991, Stat–Tech's accountant came forward with alleged irregularities indicating the company's previous financial statements had not been audited and were grossly overstated. Fenster was removed from the board of directors and Proactive was given a seat on the board. Stat–Tech formed an investigative committee, which allegedly discovered further problems at the company Id. at 3.

By June 1992, the company's fortunes had declined seriously enough that it filed for bankruptcy protection. It emerged from Chapter 11 reorganization as the Stat–Tech Liquidating Trust ("Trust"), authorized by Bankruptcy Judge Brooks to continue Stat–Tech's pursuit, jointly with Proactive, of claims against Fenster, Lamb, Thompson, and others. Id.

## II. THE MOTIONS TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT

### A. No. 92–K–1040, Trust v. Fenster, Lamb & Thompson

In its 60–page Fourth Amended Complaint in 92–K–1040, plaintiff Trust asserts claims against Fenster, Lamb and Thompson individually and as former officers/directors of Stat–Tech, and against Fenster and Lamb nominally as trustees of a trust created for the benefit of their daughter Jessica Fenster and other unidentified children. Included are claims for violations of federal and state securities laws, common law fraud, breach of fiduciary duty, and negligent misrepresentation. The Trust alleges Fenster, Lamb and Thompson pursued a common scheme to violate federal and state securities laws by misrepresenting Stat–Tech's value and then cashing in on inflated stock prices for their personal financial gain.

Fenster and Lamb both filed motions seeking the dismissal of the Trust's claims. Thompson filed a motion seeking dismissal, or, in the alternative, entry of partial summary judgment against the Trust.

### 1. Defendant Fenster's Motion to Dismiss

Fenster, who is proceeding pro se, contends the Complaint should be dismissed with prejudice because (1) the Trust lacks "authority, capacity and legal existence" to sue; (2) counsel for the Trust has "demonstrated an unacceptable standard of egregious conduct as it relates to Defendant Fenster"; (3) plaintiff's "use" of Fenster's former legal counsel violated Fenster's constitutional rights; (4) the allegations against Fenster are erroneous; (5) the Complaint fails to state a claim upon which relief can be grant-

---

**3.** These are financial disclosure statements filed with the Securities Exchange Commission (SEC).

ed; (6) the claims are time-barred; (7) plaintiff has not been harmed; (8) plaintiff has failed to join necessary parties; and (9) plaintiff lacks standing to claim shareholder consequential damages. Mot. Dismiss Compl. at 2. The motion is deficient in numerous respects.

Fenster fails to allege any facts in support of his motion by affidavit or otherwise. He also fails entirely to provide legal authority for the positions taken. Fenster's second and third arguments regarding egregious conduct and the deprivation of his constitutional rights are premised on Fenster's assertion that the law firm of Arnold & Porter should be disqualified from representing the Trust because it represented Stat–Tech when Fenster was an officer. Judge Matsch has rejected Fenster's assertion twice before: once in denying Fenster's Motion to Disqualify Arnold & Porter and again in denying Fenster's Motion for Reconsideration. *See* Courtroom Minutes (dated October 8, 1993); Order (denying motion for reconsideration, filed October 22, 1993). A *pro se* litigant must recognize that repeatedly raising assertions which already have been rejected serves only to diminish his ability to persuade on other issues.

 With respect to Fenster's assertion that plaintiff has failed to join indispensable parties, Fenster makes no attempt either to identify the individuals he claims should have been joined or to aver how their absence impedes his ability to protect his interests or subjects him to multiple or inconsistent liabilities. Fenster therefore fails to meet his burden under Fed.R.Civ.P. 12(b)(7) and 19 of showing joinder is necessary. *See First Nat'l Bank of Strasburg v. Platte Valley State Bank,* 107 F.R.D. 120, 122 (D.Colo. 1985). Fenster's fact-based arguments that the Trust's allegations are erroneous and the Trust has not been harmed are improper grounds upon which to premise a motion to dismiss and will not be considered.

Fenster's remaining arguments regarding the statute of limitations, standing and the sufficiency of the Trust's *scienter,* damages, and securities fraud allegations will be addressed in my consideration of Lamb's motion to dismiss, in which Fenster purports to join. *See* Fenster's Reply Supp. Mot. Dismiss (filed June 13, 1995).

### 2. Defendant Lamb's Motion To Dismiss

Defendant Lamb asserts the Fourth Amended Complaint should be dismissed for the following reasons: (1) the fraud-based claims are not pleaded with particularity as required by Fed.R.Civ.P. 9(b); (2) the alleged misconduct of defendant officers must be imputed to the company itself, thereby barring any claim for fraud under *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.1982); (3) the Trust lacks standing to bring a claim under § 10(b) of the 1934 Securities and Exchange Act (the "Act"), Rule 10b–5 or their Colorado statutory analog, C.R.S. § 11–51–604(5)(c); and (4) the securities claims are time-barred under the "one-year/three-year" statute of limitations established by the Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 362, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991). With respect to the state common law claims, Lamb also urges me to decline to exercise supplemental jurisdiction over them on grounds they are substantially broader than, and predominate over, the Rule 10b–5 claim.

#### a. Fed.R.Civ.P. 9(b)

The primary purpose of Rule 9(b) is "to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ambraziunas v. Bank of Boulder,* 846 F.Supp. 1459, 1464 (D.Colo.1994) (applying *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 986 (10th Cir.1992) and *Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986)). Lamb contends the factual allegations in the Fourth Amended Complaint fail to provide her notice of the fraud she is alleged to have committed. The contention is unpersuasive.

 To plead a securities fraud claim with particularity, plaintiff must connect each defendant with a specific misrepresentation. *See In re Storage Technology Corp. Securities Litigation,* 804 F.Supp. 1368, 1372–73 (D.Colo.1992) (applying *Farlow* and *Carlstedt* and rejecting "group pleading approach"). When such a nexus is pleaded, general averments of intent or *scienter* are adequate under Rule 9(b). *Id.,* 804 F.Supp. at 1373.

By connecting Lamb to the alleged misrepresentations in Stat–Tech's 1989 10–K, and then, through her husband Raynard Fenster, to a continuing string of misrepresentations culminating with the 1991 investor letter and press releases, the Trust has complied with Rule 9(b). Rule 9 is an exception to the requirement of Rule 8 that pleadings should be simple, concise and direct and should therefore be read restrictively, not expansively. *See Carlstedt* at 1010 (citing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1298 (1969)); *Gardner v. Investors Diversified Capital, Inc.*, 805 F.Supp. 874, 876 (D.Colo.1994) (citations omitted). Construing the allegations in the Fourth Amended Complaint in accordance with these authorities, I reject Lamb's argument based on Rule 9(b).

### b. *The Cenco-analysis*

According to Lamb, the misconduct attributed to her benefitted, rather than harmed, Stat–Tech. Under these circumstances, Lamb argues, her conduct should have been imputed to the company as that of an agent and should preclude any later claim of fraud. *See* Lamb's Mot. Dismiss at 9.

Generally, the acts and knowledge of an agent are imputed to the principal. Because a corporation can act only through its agents, the rule is that the actions of corporate officers and directors are attributable to the corporate entity. However most courts, including the Supreme Court of Colorado, recognize an exception to the rule when an agent acts adversely to his principal. *McFerson v. Bristol*, 73 Colo. 214, 214 P. 395 (1923), *applied in Vail Nat'l Bank v. Finkelman*, 800 P.2d 1342, 1344–45 (Colo.App. 1990); Rest.(2d) Agency § 282(1). Colorado law governs the question of when a corporate official's misrepresentations can be imputed to the corporation. *See O'Melveny & Myers v. FDIC*, ___ U.S. ___, ___–___, 114 S.Ct. 2048, 2053–56, 129 L.Ed.2d 67 (1994) (recognizing no federal common law of imputation and requiring courts to apply state law).

Under the facts alleged in the Fourth Amended Complaint, Lamb, Fenster and Thompson acted adversely to the interest of Stat–Tech. Applying the adverse interest exception under Colorado law, these defendants' misconduct should not be imputed to the company.

Lamb relies heavily on *Cenco v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982) to support her claim that Stat–Tech is precluded from pursuing fraud claims against its former officers and directors. In *Cenco*, the Seventh Circuit applied Illinois agency law in holding that where a company, through its management, participates in the fraudulent aggrandizement of itself at the expense of outsiders, it could not later claim to be a victim of the fraud entitled to damages. *Id.* at 454. The Seventh Circuit's rationale was that the company could not be said to have relied on the truth of the fraudulent representation. *Id.* The Trust denies Stat–Tech participated in or benefitted from Lamb's fraud, and maintains *Cenco* is inapplicable. I agree.

As an initial matter, *Cenco* applies Illinois, rather than Colorado, law. Moreover, the Seventh Circuit later made clear its *Cenco* decision should apply only where " 'the managers are not stealing from the company ... but instead are turning the company into an engine of theft against outsiders.' " *Schacht v. Brown*, 711 F.2d 1343, 1347 (7th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983) (quoting *Cenco*, 686 F.2d at 454). Where a complaint alleges a far-reaching scheme to continue a company in business past its point of insolvency and systematically looting it, the Seventh Circuit held *Cenco* would not apply. *Id.* at 1348.

The argument urged by Lamb in this case, i.e., that Stat–Tech "benefitted" from the alleged fraud because its value was artificially inflated and its existence artificially prolonged by it, was squarely rejected by the Seventh Circuit:

If defendants' position were accepted, the possession of such 'friends' as [the plaintiff company] had would certainly obviate the need for enemies. We do not believe that such a Pyrrhic 'benefit' to [the company] is sufficient to even trigger the Cenco analysis which seeks to determine the propriety of imputing to the corporation the directors' knowledge of fraud.

*Id.* Cenco, the court further explained, was based upon two considerations: (1) whether the eventual recovery would compensate the victims of the fraud; and (2) whether such a recovery would deter future wrongdoings. *Id.* at 1348. Where, as here, recovery from defendants would benefit the creditors of the estate, not the wrongdoers, the company is not barred from seeking damages against allegedly corrupt former officers and directors. *Id.; see Tew v. Chase Manhattan Bank,* 728 F.Supp. 1551, 1560–61 (S.D.Fla. 1990) (applying adverse interest exception under Florida law and finding *Cenco*-analysis unavailing). Finally, I agree with the Seventh Circuit's conclusion in *Schacht* that to accept a rule that precludes a corporation from recovering damages resulting from the hiding or creation of misinformation concerning its insolvency would be to create "perverse incentives for wrong-doing officers and directors to conceal the true financial condition of the corporation from the corporate body as long as possible." 711 F.2d at 1350. Based on the Seventh Circuit's analysis in *Schacht,* I reject the argument advanced by Lamb here that the Trust's fraud claims are barred under *Cenco* because Stat–Tech was both a participant and beneficiary of the fraud.

### c. Standing—Securities Fraud

 The Trust claims Lamb violated Rule 10b–5, 17 C.F.R. § 240.10b–5 (1995), as well as Rule 10b–5's Colorado analog, codified at Colo.Rev.Stat. § 11–51–604(5)(c).[4] Rule 10b–5 proscribes "fraud in connection with the purchase or sale" of securities. Thus, to have standing to pursue a claim under the rule one must be either a "purchaser" or "seller" of securities. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S.

723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1977) (corporation has no standing to sue as representative of shareholders who bought or sold securities).

Because the Trust alleges only that its predecessor-in-interest "issued" securities as a result of defendants' alleged fraud, Lamb contends the Trust lacks standing to pursue securities claims against them under *Blue Chip Stamps.* The Trust takes issue with Lamb's narrow reading of *Blue Chip Stamps,* and maintains an "issuer" of securities victimized by fraud has standing to sue under Rule 10b–5.

This issue was addressed thoroughly in the October 8, 1992 Recommendation of Magistrate Judge Pringle. The Magistrate Judge found the allegations in the Trust's First Amended Complaint sufficient to confer standing on Stat–Tech as a "seller" of its own stock.[5] *See* Recommendation at 5–7. The eminent Magistrate Judge reasoned that while a corporation may not bring suit under § 10(b) of the Act merely because it is an issuer of securities, *see Liberty Nat'l Ins. Holding Co. v. Charter Co.,* 734 F.2d 545 (11th Cir.1984), it has been "well established" that § 10(b) and Rule 10b–5 protect corporations as well as individuals. *Id.* (citing *Superintendent of Ins. of New York v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)). Thus, a corporation that issues its own stock in reliance on another's deceptive or manipulative practice may be deemed a "seller" with standing to sue under § 10(b) and Rule 10b–5. *Id.* at 6 & n. 4, 92 S.Ct. at 165 & n. 4, (citing, *inter alia,* *Ruckle v. Roto American Corp.,* 339 F.2d 24, 27–28 (2d Cir.1964); *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195, 200–

---

**4.** In general, the Colorado Securities Act, Colo. Rev.Stat. § 11–51–201 *et seq.,* parallels the federal Securities Act of 1933 and the Securities and Exchange Act of 1934. *Sauer v. Hays,* 36 Colo. App. 190, 539 P.2d 1343, 1346 (1975), *applied in Ambraziunas,* 846 F.Supp. at 1464. Insofar as the provisions and purposes of the Colorado statute are the same as those of the federal enactments, federal authorities are "highly persuasive." *Ambraziunas* at 1464 (citing *Lowery v. Ford Hill Inv. Co.,* 192 Colo. 125, 556 P.2d 1201, 1204 (1976).

**5.** Magistrate Pringle recommended defendants' motion to dismiss be denied as to plaintiff's

claims based on § 10(b) of the Act Colorado's Rule 10b–5 analog, but granted as to plaintiff's claims based on § 20A of the Act (insider trading) and the federal RICO statute. Recommendation at 19–20. Magistrate Pringle also recommended the court decline to exercise supplemental jurisdiction over plaintiff's state law claims for fraud, breach of fiduciary duty, conversion, negligence and violation of C.R.S. § 11–51–301 (sale of unregistered securities). However, before Judge Matsch ruled on the Magistrate's Recommendation, the order of reference was withdrawn, the Trust was substituted for Stat–Tech, and a Second (then Third) Amended Complaint was filed.

203 (5th Cir.1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961)). *Accord Schoenbaum v. Firstbrook,* 405 F.2d 215 (2d Cir.1968) (en banc), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), *applied in Goldberg v. Meridor,* 567 F.2d 209 (2d Cir.1977).

■ I agree with the Magistrate Judge that there is nothing in *Blue Chip Stamps* to suggest the issuance of corporate shares cannot constitute a sale for the purposes of standing to sue under the securities laws. Moreover, *Ruckle* and *Hooper* continue to be cited with approval for the proposition that a corporation that is defrauded into issuing its own stock may sue under § 10(b) and Rule 10b–5. *See, e.g., Frankel v. Slotkin,* 984 F.2d 1328, 1333 (2d Cir.1992); *AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 158 (2d Cir.1984); *Goldberg,* 567 F.2d at 217–18; *Doll v. James Martin Assoc. (Holdings) Ltd.,* 600 F.Supp. 510 (E.D.Mich.1984). In short,

> 'There is deception of the corporation (in effect, of its minority shareholders) when the corporation is influenced by its controlling shareholder[s] to engage in a transaction adverse to the corporation's interests (in effect, the minority shareholders' interests) [based upon] nondisclosure or misleading disclosures [sic] as to the material facts of the transaction.'

6. *Applied in Anixter v. Home–Stake Prod. Co.,* 939 F.2d 1420, 1433–34 (10th Cir.1991) (Anixter I) (dismissing complaint as time-barred), *amended after denial of rehearing,* 947 F.2d 897, *cert. granted and judgment vacated,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992) (remanding cause to circuit court in light of congressional amendment of § 13 limitations provisions proscribing retroactive application of *Lampf*), *on remand,* 977 F.2d 1533 (reinstating § 10(b) claims filed before 1991 *Lampf* decision) and 977 F.2d 1549 (remanding reinstated claims to trial court for determination of statute of limitations and prejudgment interest issues) (Anixter II).

7. Lamb attributes the "inquiry notice" standard to *Anixter I,* 939 F.2d at 1434. *See* Br.Supp.Mot. Dismiss at 16. The phrase, which does not appear in the text of the Tenth Circuit's opinion, imposes no higher duty on a securities fraud plaintiff than that of "reasonable diligence." *Anixter I* at 1434 (if a putative plaintiff, in the exercise of reasonable diligence, should have discovered the cause of action, suit must be filed

*Frankel* at 1333 (quoting *Goldberg,* 567 F.2d at 217–18). Such deception is precisely what the Trust alleges here. I find the allegations in the Fourth Amended Complaint sufficient to confer standing upon the Trust to pursue its claims against Lamb based on Rule 10b–5, and Colo.Rev.Stat. § 11–51–604(5)(c).

#### d. *Statute of Limitations— Securities Fraud*

The Trust's securities claims are subject to the one-year statute of limitations and three-year statute of repose set forth in § 13 of the Act, 15 U.S.C. § 77m. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 362, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991).[6] This one-year/three-year limitations scheme provides that plaintiffs have one year from the date of discovery of a violation to file an action but may not, under any circumstances, file the action more than three years after the violation itself. *Anixter I,* 939 F.2d at 1434.

■ Stat–Tech's original complaint in this action was filed May 22, 1992. Lamb contends plaintiff's allegations show Stat–Tech had notice, or was on "inquiry notice,"[7] of the alleged fraud more than one year earlier and that therefore its securities claims are time-barred. Mot. Dismiss at 16–17. The Trust denies it had notice of defendants' fraud in May 1991 or that it was dilatory in discovering it.

within one year of the day the discovery should have been made). Moreover, as the Trust points out in footnote 9 of its response, it has been suggested that the Supreme Court in *Lampf* applied an *actual* discovery standard to securities fraud claims governed by the one-year limitations period. Resp.Mot. Dismiss at 29 (quoting Lyman Johnson, *Securities Fraud and the Mirage of Repose,* 1992 Wis.L.Rev. 607, 625 (1992) (by adopting the discovery rule as the Rule 10b–5 limitations period and then simultaneously ruling that equitable tolling is " 'unnecessary' " because the one-year period "by its own terms" starts to run only after discovery of the wrongdoing, the Supreme Court in *Lampf* "abjured" the contention that the one-year statute of limitations begins when a reasonable plaintiff "should have discovered" the facts constituting the violation; under the reasoning of *Lampf,* the period begins only once the plaintiff actually discovers the facts constituting the violation)). I need not reach the issue here, however, because I find the facts as pleaded sufficient to satisfy the statute of limitations under either standard.

Lamb's position hinges on her assertion that "the only" misrepresentation she is alleged to have made was with respect to Stat–Tech's 1989 10–K, which she signed January 3, 1990 and which was filed March 15, 1991. As set forth above, however, the Trust's allegations connect Lamb with a string of fraudulent representations and transactions spanning from 1989 through at least the end of 1991. Any assertion that Stat–Tech knew or "should have discovered" defendants' alleged fraud before it issued warrants on their behalf ignores the nature of fraud generally and assumes a level of ignorance and folly on the part of the company one should not assume at this stage of the proceedings. Finally, Lamb's conclusory assertion that she "had very little to do" with the company after 1990 (and therefore could not have participated in any misconduct during that time) is a factual matter not susceptible to resolution on a motion to dismiss.

The Fourth Amended Complaint avers sufficient facts from which the timeliness of plaintiff's securities fraud claims can be inferred. Nothing more is required.

### e. *Supplemental Jurisdiction*

Five of the Trust's six claims for relief against Lamb and Fenster are state law claims. Lamb contends I should decline to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367 because they are substantially broader than, and predominate over, the federal securities fraud claims.

According to Lamb, the Trust is attempting to expand the limited remedies available to it on its Rule 10b–5 claim by "piggy-backing" onto it various state law fraud and breach of fiduciary duty claims for which broader remedies exist. Lamb's Reply Mem. Supp. Mot. Dismiss at 4. As "evidence," Lamb points to the nature of the relief requested: Salaries; bonuses; loss of good will; decline in the value of the company; liabilities incurred to third parties; fees and costs in connection with the bankruptcy; costs of investigating the alleged fraud; investor lawsuit defense costs; loss of going concern value; and an accounting. Not only are these items unrecoverable in a Rule 10b–5 action, Lamb maintains, but they also are the subject of proceedings presently pending before the Colorado state courts.[8] Lamb's Br. Supp. Mot. Dismiss at 18. Lamb's position is that this is a state law corporate mismanagement action characterized, for jurisdictional purposes, as one for securities fraud. Because the state law claims predominate, Lamb argues I should decline to exercise supplemental jurisdiction over them.

Magistrate Pringle, in his October 8, 1992 Recommendation, agreed. He determined that with the exception of the claim based on Colorado's Rule 10b–5 analog, the Trust's state law claims predominated over the federal claim. Recommendation at 18 (noting the fraud, negligence and breach of fiduciary duty claims concern transactions in which Stat–Tech did not occupy the position of a buyer or seller of securities, and finding the sale of unregistered securities and conversion claims required consideration of matters beyond the scope of a 10b–5 claim). However, given my analysis of the Judicial Improvements Act of 1990 in *LaSorella v. Penrose St. Francis Healthcare Sys.*, 818 F.Supp. 1413, 1415–16 (D.Colo.1993),[9] and the fact that the more problematic of the state law claims have been withdrawn,[10] I will accept supple-

---

8. The accuracy of this assertion cannot be ascertained. Lamb neither identifies nor explains the nature of the purported state court proceedings, and the Trust does not address them at all. Because I accept supplemental jurisdiction over these claims regardless of whether parallel proceedings are ongoing in state court, the existence and status of these proceedings is irrelevant.

9. In *LaSorella*, I concluded the JIA expanded supplemental jurisdiction and created a " 'strong presumption' " in favor of its exercise. 818 F.Supp. at 1415–16 (quoting J. Oakley, Recent Statutory Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvements Acts of 1988 and 1990, 24 U.C.Davis L.Rev. 735,

766 (1991)). *See James v. Sun Glass Hut,* 799 F.Supp. 1083, 1084 (D.Colo.1992) (Babcock, J.); 13B C. Wright, A. Miller, E. Cooper, *Fed.Prac. & Proc.* § 3567.3 at 39 (2d ed. Supp.1995). With respect to the question of whether state law claims "substantially predominate" over federal claim(s), I found the JIA mandated the exercise of supplemental jurisdiction unless the former "eclipsed" the latter. 818 F.Supp. at 1416.

10. After the reference to Magistrate Pringle was withdrawn, the Trust amended its complaint. Among other things, the Trust withdrew its state law conversion and sale of unregistered securities claims.

mental jurisdiction over the Trust's state law claims.

While state law may predominate in terms of the comprehensiveness of remedies sought on the remaining state law claims, all of the Trust's claims stem from the same alleged misconduct of defendants. The fact that three years have passed since this case was filed also militates against refusing to exercise jurisdiction over the state law claims now. I therefore accept jurisdiction over these claims and will consider them on their merits.

3. *Defendant Thompson's Motion to Dismiss Portions of the Fourth Amended Complaint or, in the Alternative, for Partial Summary Judgment*

Defendant Thompson was an outside director of Stat–Tech from January 1988 to May 1991. According to the Trust, Thompson owned more than 10% of Stat–Tech's outstanding common stock during the time period relevant to its claims, signed Stat–Tech's 1989 10–K, and knowingly, or with reckless disregard for the truth, participated in Fenster and Lamb's scheme to defraud Stat–Tech. Thompson moves to dismiss, or, in the alternative, for summary judgment on four of the Trust's six claims for relief against him.[11]

Thompson premises his motion to dismiss or for partial summary judgment on two contentions. First, he maintains that he—like other outside directors and "everyone else"—was deceived by Stat–Tech's management and learned of the fraud only after it became public. Thompson Br. Supp. Mot. Dismiss/Mot. Partial Summ. J. at 2. In support of his assertions, Thompson submits his own affidavit attesting to the passive nature both of his involvement in Stat–Tech's opera-

tions and the sale of his Stat–Tech stock. *Id.*, Ex. A. Thompson contends he had no knowledge of the fraud at the time it was perpetrated, and asserts the Fourth Amended Complaint alleges no facts from which such knowledge, or even reckless disregard of it, can be inferred. Absent specific facts supporting such an inference, Thompson contends the Trust's securities fraud and related claims should be dismissed.

Second, Thompson contends he is entitled to judgment with respect to the recoverability of two categories of damages: (a) liabilities to third-parties incurred as a result of defendants' alleged misconduct; and (b) lost "going concern value" of Stat–Tech. Thompson argues the first category is unrecoverable both because the Trust lacks standing to sue under § 10(b) of the Act, and because recovery is barred under Colorado's Uniform Contribution Among Tortfeasors Act. Thompson Mot. Dismiss at 26. Thompson contends the second category is unrecoverable because, under the Trust's own theory of the case, Stat–Tech's "value" was created by the alleged fraud itself. According to Thompson, the Trust should be precluded from claiming as damages the loss of a "value" that never existed.

a. *Scienter—"Awareness of Wrongdoing"* [12]

 The Trust asserts that under applicable Tenth Circuit and Colorado state court law, Thompson's knowledge or reckless disregard of Fenster's fraud may be averred generally and established by circumstantial evidence. Pl.'s Resp. Thompson Mot. Dismiss at 6–9 relying on *Anixter II*, 977 F.2d at 1552 (Tenth Circuit, "aligning" itself with other circuits, held proof of recklessness satisfies the "state of mind" requirement both for primary and secondary liability [13] under

---

**11.** Thompson challenges the Trust's Second Claim for Relief, alleging violations of the 1934 Securities and Exchange Act and Rule 10b–5; the Fourth Claim for Relief, alleging violations of C.R.S. § 11–51–604(5)(c); Fifth Claim for Relief, alleging common law fraud; and the Seventh and Eighth Claims for Relief, alleging breaches of fiduciary duty.

**12.** The Tenth Circuit in *Decker v. Securities & Exch. Comm'n*, 631 F.2d 1380, 1386–88 & n. 13 (1980), adopted the District of Columbia's practice of replacing references to *scienter* with terms such as "state of mind" or "awareness of wrong-

doing." *See Investors Research Corp. v. SEC*, 628 F.2d 168 (D.C.Cir.1980). While the Tenth Circuit has not been consistent in its use of these terms, I find them clearer and will use them here.

**13.** Secondary liability as a "controlling person" under § 20(a) of the 1934 Act or as one providing "substantial assistance" to a primary violator under the Colorado Act, however, remains subject to the affirmative defense of "good faith." *First Interstate Bank of Denver v. Pring*, 969 F.2d 891, 895–96 (10th Cir.1992) (construing § 20(a)); Colo.Rev.Stat. 11–51–604(5).

securities laws), *In re Storage Tech.*, 804 F.Supp. at 1373 (discussing pleading requirements under Rule 9(b), and *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo.1987) (for common law fraud claim, intent, knowledge or other condition of mind may be averred generally)). Because the Fourth Amended Complaint alleges sufficient facts from which Thompson's "awareness of wrongdoing" can be inferred, the Trust maintains the requirements of Rule 12 have been satisfied.

I agree. While the facts alleged to support a nexus between the alleged fraud and Thompson's state of mind are sparse, they are sufficient to state claims under the federal and state securities laws. They permit an inference that Thompson knew Stat–Tech's financial condition and stock value were inflated, and that he used that knowledge for his own gain. Moreover, given that discovery has been stayed pending resolution of the motions to dismiss, the Trust has had no opportunity to discover facts related to Thompson's knowledge necessary to oppose a motion for summary judgment. Under these circumstances, neither an order of dismissal nor the entry of summary judgment would be appropriate.

b. *Recoverability of liabilities owed third-parties and lost "going concern value."*

I have addressed already the standing issue raised by Thompson when I concluded in section II(A)(2)(c), *supra*, that the Trust has alleged sufficient facts from which Stat–Tech's status as a defrauded issuer/seller of securities can be inferred, and thus may pursue its securities fraud claims against the defendants. Consideration is therefore limited to Thompson's assertion that the Trust may not recover for claims it owes third-parties because those claims have not yet been, and may never be, paid.

 Numerous purchasers of Stat–Tech stock have filed claims against Stat–Tech in the underlying bankruptcy proceedings. Under the Joint Plan of Liquidation, the Trust is obligated to pay these claims out of the proceeds of this litigation, if any, after non-shareholder creditors have been paid. Thompson characterizes the Trust's efforts to recover for these obligations as a request for contribution from a joint tortfeasor. Thompson Mot. Dismiss at 28. Under Colorado's version of the Uniform Contribution Among Tortfeasors Act, a request for contribution may be asserted only after one tortfeasor has paid more than his *pro rata* share of an already determined common liability. *See* C.R.S. § 13–50.5–102(2). Thompson cites no case in which the Act was invoked to bar the remedy sought by the Trust here, and such a bar would defy logic. Obviously the underlying bankruptcy claims have yet to be paid—that is the nature of bankruptcy proceedings and the liquidation of those claims is the "liquidating Trust's" *raison d'etre*. I find Thompson's argument unpersuasive and reject the "joint tortfeasor" analogy out of hand.

Next Thompson asks me to strike the Trust's claim for loss of "going concern value" because such value was illusory and the product of fraud. According to Thompson, Stat–Tech can not have been damaged by the loss of value that never existed. While this argument has a rather logical panache, presumably Stat–Tech had value independent of that created by the alleged fraud which, one can infer, was lost when Stat–Tech went out of business. It therefore would be premature to strike this request for relief at this stage of the proceedings.

Accordingly, Thompson's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment is denied.

B. No. 92–K–1994, *VBW Partners et al. v. Fenster et al.*

This action arises out of the November 1991 purchase by VBW and TRW of 4,000,-000 shares of Thompson's Stat–Tech stock. Alleging they were induced to buy Thompson's stock at a fraudulently inflated price, VBW/TRW asserts claims for securities fraud and other statutory and common law claims against Fenster, Lamb, Thompson, Schneider Securities, and former Schneider broker Rodger Thornton. Before me for consideration in this action are motions to dismiss filed by Fenster, Lamb, Thompson and Schneider.

1. *Fenster, Lamb and Thompson*

 With respect to the motions of Fenster and Thompson, which are identical in

substance to the Fenster and Thompson motions filed in lead case 92–K–1040, I refer to the analysis in Section II(A) of this memorandum and deny them. With respect to Lamb's motion, I agree the nexus between Lamb's conduct and plaintiffs' purchase in 1991 of Thompson's stock is less than clear based on the allegations in the Second Amended Complaint. However, the allegations form a factual outline sufficient to permit an inference that Lamb knew of, and helped further, the allegedly fraudulent scheme to induce VBW/TRW to buy Thompson's stock. I therefore deny Lamb's motion as well, without prejudice as to it being reasserted at a later time. The motion filed by Schneider raises important issues regarding the nature and extent of derivative or secondary liability under the securities laws, and merits more detailed consideration.

### 2. *Schneider Securities' Motion to Dismiss* [14]

Plaintiffs in their Second Amended Complaint purport to state direct liability claims against Schneider for federal and state securities fraud (First and Second Claims for Relief); common law fraud (Third and Fourth Claims for Relief); breaches of duties imposed by the Rules of Fair Practice promulgated by the National Association of Securities Dealers (the "NASD Rules") (Fifth and Sixth Claims for Relief); and vicarious liability for the fraudulent acts and omissions of broker Roger Thornton (Seventh Claim for Relief). Alternatively, VBW and TRW assert Schneider is secondarily liable as a "controlling person" under Colo.Rev.Stat. § 11–51–604(5)(b) and for providing "substantial assistance" to "the other defendants" pursuant to § 11–51–604(5)(c). Pls.' Resp. at 9.

#### a. *Securities claims*

Schneider contends there is no basis for finding Schneider primarily liable for violations of either state or federal securities laws. Specifically, Schneider maintains direct liability is precluded as a matter of law because (1) Schneider was neither a buyer nor seller of the securities in question; (2) plaintiffs' claims are inadequate under Fed.

R.Civ.P. 9(b); and (3) plaintiffs have failed to plead compliance with the applicable one-year/three-year statute of limitations. Nor is there a basis, Schneider argues, for finding it secondarily liable to plaintiffs either as a controlling person or as an aider and abettor under Colorado securities laws. According to Schneider, any assertion that it is liable because it employed an individual (Thornton) who allegedly participated in the fraudulent sale of stock by another (Thompson) states a "a novel, double derivative liability theory" for which there is no legal authority. Further, Schneider argues, the theory duplicates plaintiffs' *respondeat superior* claim and should be dismissed for that reason as well.

#### (1) *Primary liability*

■ A primary violation of § 10(b) or Rule 10b–5 may not be maintained in the absence of allegations of fraud with intent to deceive, manipulate or defraud on the part of the defendant. *See Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d at 986. As set forth above, Fed.R.Civ.P. 9(b) requires plaintiffs to connect each defendant with a specific misrepresentation or misrepresentations. *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d at 1011. With respect to Schneider in the present case, plaintiffs fail to do so.

Plaintiffs contend paragraphs 23–26, 45–52, 54–56, 58, 60–61, 63, and 65 of their Second Amended Complaint "state in detail the basis for Schneider's liability to the Plaintiffs directly and through the actions of Thornton." Pls.' Resp. Schneider Mot. Dismiss at 3. Fifteen of the twenty paragraphs fail even to mention Schneider. Of the five that do (¶¶ 23, 45, 49, 54, and 55), the only one that references representations purportedly made by Schneider is ¶ 55, which states:

*Based upon the representations of Schneider Securities,* Thornton and Fenster, through Pittock, represented to the Plaintiffs that Stat–Tech would be listed on NASDAQ by the end of 1991, that Plaintiffs would experience a significant short-term increase in the market value of the shares, and that Plaintiffs therefore would

---

**14.** On April 27, 1995, defendant Roger Thornton filed a *pro se* document in which he purported to "join" in Schneider's motion to dismiss plaintiffs' claims. That same day, however, Thornton filed an Answer to the Second Amended Complaint, which rendered his "joinder" moot.

be able to realize a substantial profit by selling Stat–Tech shares into the market. Second Am. Compl., ¶ 55 (emphasis added).[15] This allegation simply does not support a claim for primary liability against Schneider. The "representations" attributed to Schneider are not identified, although the reference apparently is to the 1989–90 10–Qs and 10–Ks signed in March 1991, a November 12, 1991 letter to potential shareholders and an October press release touting Stat–Tech's success and future prosperity. *Id.*, ¶¶ 25, 44, 48, 52. Plaintiffs' only attempt to connect Schneider to the alleged misrepresentations contained in these documents is through its employment (through October 1991) of Thornton. *See id.*, ¶ 54 (alleging these documents were provided to plaintiffs by Pittock and Thornton, Fenster and Thompson "through Schneider"). Recently I observed that "prolixity is not an acceptable substitute for specificity" under Rule 9(b). *Schwartz v. Celestial Seasonings*, 904 F.Supp. 1191, 1200 (D.Colo.1995). Nor, as the rule applies in this case, is the circumlocution employed by plaintiffs here.

I find plaintiffs have failed to plead a claim against Schneider for primary liability under either § 10(b) of the 1934 Securities Exchange Act or its Colorado analog. *See Ambraziunas v. Bank of Boulder*, 846 F.Supp. at 1464–65 (the particularity mandated by Rule 9(b) for federal securities claims applies also to Colorado state law securities claims). Schneider's motion to dismiss plaintiffs' Second Amended Complaint therefore is granted to the extent it purports to state claims against Schneider for primary violations of the securities laws.[16]

#### (2) *Secondary liability*

Colorado Revised Statute § 11–51–501 proscribes fraud "in connection with the offer, sale, or purchase of any security." Section 11–51–604 provides for the civil remedies available to victims of such fraud. Subsec-

tions 11–51–604(3) and (4) states that one who "sells or buys" a security in violation of § 11–51–501 is liable to the person to whom the security was sold or from whom the security was bought for damages, or for such other legal or equitable relief as the court deems appropriate. Subsection 11–51–604(5) provides that those who "control" persons primarily liable under subsections (3) and (4) or who provide "substantial assistance" to conduct they know violates § 11–51–501 are liable "jointly and severally with and to the same extent" as the primary violator. Secondary liability under § 11–51–604(5)(b) is subject to the affirmative defense of good faith.

The Colorado "controlling person" statute is modeled after § 20(a) of the 1934 Act. In *First Interstate Bank of Denver, N.A. v. Pring*, the Tenth Circuit held that to establish a *prima facie* case of "controlling person" liability under § 20(a), plaintiff must establish both the existence of a primary violation of the securities laws and "control" by the alleged controlling person. 969 F.2d 891, 895–98 (10th Cir.1992), *rev'd on other grounds sub nom. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, — U.S. —, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). As interpreted by the Tenth Circuit, "control" may be established by showing defendant had "some indirect means of discipline or influence" over the primary violator. *Id.* at 896. A showing of "actual" or "culpable" participation is not required. *Id.* at 897 (rejecting culpable participation requirement applied in other circuits).

Plaintiffs claim Schneider, as Thornton's employer, was a "controlling person" with respect to Thornton's alleged primary violations of the securities laws and thus is liable for Thornton's alleged fraud under § 11–51–604(5)(b). Plaintiffs also claim Schneider provided "substantial assistance"

---

**15.** The remaining paragraphs either group Schneider together with the other defendants as having "known" or as having been "recklessly indifferent" to the fact that representations made to plaintiffs were false (¶ 49), or support claims of secondary, rather than primary, liability against Schneider by alleging that Schneider was in a position to influence Thornton (¶ 23) or provided documents and other information to plaintiffs "through Thornton" (¶¶ 53–54).

**16.** Because I grant Schneider's motion to dismiss plaintiffs' primary liability claims under Rule 9(b), I decline to reach Schneider's standing or statute of limitations arguments.

to Thornton in his alleged fraud, and thus "through Thornton," provided "substantial assistance" to Thompson in his alleged fraud. Pls.' Resp. at 9.

In support of its motion to dismiss, Schneider asserts the only person who "sold or bought" a security within the meaning of § 11–51–604(3) and (4) was Thompson. Accordingly, Schneider argues, any claim for secondary liability based on the conduct of Thornton must be dismissed. I disagree. Primary liability under the Colorado Securities Act is available against "any person, [who], in connection with the offer, sale, or purchase of any security, directly or indirectly" engages in fraud. Colo.Rev.Stat. § 11–51–501(1). Given the remedial purpose of the securities laws generally and the "controlling person" provision specifically (*see Pring*, 969 F.2d at 896), I find plaintiffs have stated both a primary liability claim against Thornton for violating the securities laws, as well as a secondary liability claim against Schneider as a controlling person of Thornton or as one who provided substantial assistance to Thornton's alleged misconduct.

■■■ With respect to Thompson, however, I find plaintiffs have failed to state a claim for secondary liability against Schneider. The chain of control for the purposes of "controlling person" liability begins and ends with the individual or individuals over whom the defendant has some "means of discipline or influence." *See Pring*, 969 F.2d at 896. Were I to adopt the double derivative theory of liability proposed by plaintiffs here, "controlling person" liability would extend to every participant or cohort of the person "controlled" regardless of the defendant's true ability to influence that individual. This I decline to do.

Accordingly, I grant in part and deny in part Schneider's motion to dismiss plaintiffs' second claim for relief for violation of Colo. Rev.Stat. § 11–51–604(5)(b) and (c). I hold plaintiffs may pursue a secondary liability claim against Schneider that is based on the alleged primary violation of the person controlled, here, Roger Thornton. However, plaintiffs may not pursue a secondary liability claim against Schneider that is based on Thornton's alleged participation in the primary violation of Thompson.

*b. Claims for violation of NASD rules*

Plaintiffs' fifth and sixth claims for relief allege that Thornton and Schneider negligently, and in breach of their fiduciary duties to plaintiffs, violated Article III, §§ 3 and 18 of the NASD Rules of Fair Practice. Schneider contends there is no private right of action under these rules, but argues that even if there were, plaintiffs were never customers of Schneider and the rules create no duties with respect to non-customers. Mot. Dismiss at 10–11.

■■■ The Tenth Circuit has stated that "in an appropriate case," the securities exchange rules may give rise to a private cause of action. *Utah State Univ. Agric. & Applied Science v. Bear, Stearns & Co.*, 549 F.2d 164, 168 (10th Cir.1976). In order to avoid the potential for "massive liability" of exchange members and to encourage self-regulation, however, the Tenth Circuit defines an "appropriate case" to be one that alleges more than mistake or negligence. *Id.* (allegations in "appropriate case" must be "tantamount to fraud"), *applied in Noland v. Gurley*, 566 F.Supp. 210, 214–15 (D.Colo. 1983) (Kane, J.). Here, plaintiffs' sixth claim for relief is premised solely on Schneider's alleged negligent "failure to adequately supervise Thornton and ... failure to establish and maintain a reasonable system of supervision." Under the law of this circuit, these allegations fail to state a claim upon which relief can be granted.

■■■ By contrast, plaintiffs' fifth claim for relief is premised on Thornton's participation in the allegedly fraudulent scheme to induce plaintiffs to purchase Thompson's overvalued Stat–Tech stock. With respect to Thornton, this claim survives a motion to dismiss under *Bear Stearns* and *Gurley*. With respect to Schneider, however, survival of plaintiffs' fifth claim is less clear.

■■■ As pleaded by plaintiffs, Schneider's liability for violating the NASD rules is premised solely on its employment of Thornton. Plaintiffs allege that Schneider, "through Thornton," participated in Fenster et al.'s fraudulent scheme and that Schneider, "as supervising broker for Thornton" breached fiduciary duties owed plaintiffs.

Second Am. Compl., ¶¶ 93–95. While no court appears to have addressed the question of whether such conduct gives rise to an implied right of action under the securities exchange rules, reason dictates it should not. I find support for this conclusion in the Supreme Court's recent decisions in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* — U.S. —, —, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994) (refusing to imply private cause of action for aiding and abetting under § 10(b) of the Act) and *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1101, 111 S.Ct. 2749, 2763, 115 L.Ed.2d 929 (1991) (rejecting attempt to extend scope of implied cause of action under § 14(a) Act). These cases reveal a trend away from the broad application of implied causes of action under the securities laws, and counsel against any recognition here of what can only be viewed as a private cause of action under the NASD rules for vicarious liability. Accordingly, VBW/TRW's fifth claim for relief against Schneider also is dismissed.

#### c. *Plaintiffs' vicarious liability claim*

The doctrine of *respondeat superior* is an agency principle and concerns the scope of course of employment. Schneider claims it cannot be liable under the doctrine of *respondeat superior* for the acts of Thornton because plaintiffs were never Schneider's customers. Schneider argues that plaintiffs' own allegations show Thornton was acting on his own account in his dealings with them, for his own benefit, and against the interest of Schneider. Schneider Mot. Dismiss at 10 (citing Second Am. Compl., ¶ 63).

Plaintiffs, however, allege they entered into a contract with Thornton for the purchase or sale of securities while Thornton was employed by Schneider, and that under the general laws of agency, the fraud of an employee may be attributed to his employer where the employer "knows of and encourages the fraudulent behavior of his [employee.]" Pls.' Resp. at 11 (citing *King v. Horizon Corp.,* 701 F.2d 1313, 1319 (10th Cir. 1983)). This is precisely what is alleged here. Accordingly, I deny Schneider's motion to dismiss plaintiffs' seventh claim for relief alleging liability on the part of Schneider for the acts of alleged employee-broker Thornton.

### C. No. 92–K–2441, *Proactive et al. v. Fenster et al.*

In this action, plaintiffs Proactive Partners, L.P. ("Proactive") and Lagunitas Partners, L.P. ("Lagunitas") assert state and federal securities fraud as well as common law fraud claims against Fenster, Lamb, Thompson, Thornton, and Schneider arising out of two securities transactions that took place in the fall of 1991. In September 1991, plaintiffs allege they were fraudulently induced to purchase 20,000,000 shares of Stat–Tech stock through a private placement for a total price of 1.5 million dollars. In October 1991, plaintiffs allege they were fraudulently induced to purchase 15,210,000 shares of Stat–Tech stock from Thompson at a price of $ 1,000,000. Plaintiffs continue to hold this stock.

The only motions to dismiss filed in No. 92–K–2441 are those of Fenster and Lamb.[17] Fenster's *pro se* motion is identical to those filed in the related actions and is without merit for the reasons stated above. Lamb's motion, which highlights effectively the weaknesses in plaintiffs' case against her, nevertheless fails to persuade me that a dismissal at this stage of the proceedings is warranted.

Lamb's assertion that she owed no duty to plaintiffs to disclose material information is irrelevant when, as an officer of Stat–Tech, she signed the 1989 10–K upon which plaintiffs, among other things, claim they relied. *See Alter v. DBLKM,* 840 F.Supp. 799, 808 (D.Colo.1993) (Babcock, J.) (10b–5 claim could not be dismissed for want of a duty of disclosure where allegations go beyond "silence" cases to allege affirmative misstatements induced bond purchases at issue). Further, Lamb's assertions that she "never dealt with the Plaintiffs," "never met the Plaintiffs," "never made a representation to the Plaintiffs," and "[i]n short ... had

---

**17.** Defendants Thornton and Schneider were dismissed as party defendants in May 1995 after reaching settlement with plaintiffs. Defendant Thompson filed his Answer to plaintiffs' Amended Complaint on April 14, 1995.

absolutely nothing to do with Plaintiffs' purchase of stock" are irrelevant when the allegations in the Amended Complaint give rise to contrary inferences. Similarly, Lamb's assertions regarding the lack of factual support for plaintiffs' vicarious liability claim against her are irrelevant when the facts alleged are that Lamb, an officer of Stat-Tech, was married to Fenster, also an officer of Stat-Tech, and signed the initial financial statement that formed the basis for the fraud allegedly perpetrated against plaintiffs. While an agency relationship is not automatically established by virtue of a marital relationship, the facts alleged here are sufficient to create an inference that such a relationship existed.

Lamb's remaining arguments regarding the sufficiency of plaintiffs' allegations have already been addressed. Incorporating my analysis and conclusions set forth above, Lamb's motion to dismiss plaintiffs' claims in No. 92–K–2441 is denied.

### III. *CONCLUSION*

Upon consideration of the ten motions to dismiss pending in Civil Action Nos. 92–K–1040, 92–K–1994 and 92–K–2441, I rule as follows:

IT IS ORDERED that the motions to dismiss and/or for summary judgment filed by defendants Fenster, Lamb and Thompson in 92–K–1040 are DENIED.

FURTHER ORDERED that the motions to dismiss and/or for summary judgment filed by defendants Fenster, Lamb and Thompson in No. 92–K–1994 are DENIED.

FURTHER ORDERED that the motion to dismiss filed by Schneider Securities in No. 92–K–1994 is GRANTED in part and DENIED in part. Plaintiffs' First and Second Claims for Relief against Schneider alleging primary violations of federal and state securities laws are dismissed for failure to plead the circumstances of fraud with particularity pursuant to Fed.R.Civ.P. 9(b). Plaintiffs' Second Claim for Relief against Schneider for secondary liability under the federal and state securities laws, to the extent it is based on the alleged primary violation of Thompson, fails to state a claim upon which relief can be granted and is dismissed with prejudice. Plaintiffs' Sixth Claim for

Relief, alleging negligence under the NASD Rules, also fails to state a claim upon which relief can be granted and is dismissed with prejudice. In all other respects, Schneider's motion to dismiss plaintiffs' Second Amended Complaint is DENIED.

FURTHER ORDERED that the motions to dismiss filed by Fenster and Lamb in No. 92–K–2441 are DENIED. Finally,

IT IS ORDERED that these cases are set for a Scheduling Conference at 9:00 a.m., December 5, 1995, in Courtroom C–401. The parties are to comply with the enclosed instructions and with D.C.Colo.LR 29.1.